STATE OF CONNECTICUT *v.* JOSEPH G. KEHLENBACH

FILE No. CR 8-7110

STATE OF CONNECTICUT *v.* ROBERT CAMERON

FILE No. CR 8-7107

STATE OF CONNECTICUT *v.* KEITH THOMPSON

FILE No. CR 8-8132

CIRCUIT COURT                                                        EIGHTH CIRCUIT

Memorandum filed May 26, 1967

*Jerome A. Lacobelle,* assistant prosecuting attorney, for the state.

*Richard L. Jacobs,* of New Haven, for the defendant in the first case.

*Frank A. Piccolo,* of New Haven, for the defendants in the second and third cases.

JACOBS, J. The informations in these cases charge the defendants with the crime of illegal possession of narcotics and drugs in violation of § 19-246 of the General Statutes. Prior to trial, the defendants filed motions to suppress the use of the drugs as evidence because the defendants claim that the arresting officers seized the articles as the result of an illegal search and seizure.

A hearing was held on the motions. The testimony disclosed that on January 22, 1967, at or about 2:25 a.m., the defendant Kehlenbach and three male companions were seated in Kehlenbach's 1958 two-door Chevrolet automobile, which was legally and properly parked in front of 39 Dodge Avenue in East Haven. Kehlenbach was seated behind the wheel. The lights on the car were turned off; the motor was running. Officer James Criscuolo, a member of the East Haven police department, was dispatched by Sergeant Boychuk to 39 Dodge Avenue "in response to a suspicious vehicle [about] which a complaint was filed by a neighbor—by a resident of that street." The sworn application for

an arrest warrant recites that "a resident of the area [who] made observations of the occupants [of the car] caused her to become suspicious of their actions." She became suspicious because the "occupants of the vehicle appeared to be rolling their own cigarettes." As a result of the complaint, Officer Criscuolo and additional police assistance converged upon the parked vehicle, all officers arriving at the scene at about the same time. Upon request of the police officers, Kehlenbach produced a valid operator's license and a certificate of registration. Officer Criscuolo, on cross-examination, was asked: "Was there anything of any nature, any action that was suspicious or illegal as far as you were concerned as you observed them [the defendants]?" He replied: "No, Sir." None of the officers knew or had any knowledge or information about Kehlenbach or his companions. Kehlenbach told the officers they were waiting for "some girls." The occupants were ordered to alight from the vehicle, whereupon the interior was illuminated when the door of the car was opened. The officers testified they were able at this point to see into the interior, particularly the front seat area. A search of the car was made. Contraband was uncovered which on chemical analysis turned out to be heroin and marihuana. All four were arrested and charged with illegal possession of narcotics and drugs in violation of § 19-246 of the General Statutes.

The defendants contend that the search was in violation of their rights under the fourth amendment to the federal constitution and that therefore the articles seized must be suppressed as evidence on trial. The fourth amendment does not prohibit all searches and seizures. To be stopped, and searched, always an inconvenience at best, is not always unreasonable. Thus, as Mr. Justice Jackson noted, "[r]egulations of traffic, identifications

where proper, traffic census, quarantine regulations, and many other causes give occasion to stop cars in circumstances which do not imply arrest or charge of crime." *Brinegar* v. *United States,* 338 U.S. 160, 188 (dissenting opinion). Likewise, while there is uncertainty as to the permissible extent of a reasonable search after arrest, the law is clear that if the arrest is proper at least some accompanying search is proper. See *United States* v. *Rabinowitz,* 339 U.S. 56, 60-61; *Agnello* v. *United States,* 269 U.S. 20, 30; *Carroll* v. *United States,* 267 U.S. 132, 158.

The law recognizes that the reasonableness of a search of a moving vehicle without a warrant is to be judged differently from that of a search of a home. See *Carroll* v. *United States,* supra; *Brinegar* v. *United States,* supra; 79 C.J.S., Searches and Seizures, § 66 (h) (1). "This element of mobility makes it impracticable, if not impossible, to obtain a search warrant in most instances." Davis, Federal Searches and Seizures, p. 216; Dahl & Boyle, Procedure and the Law of Arrest, Search and Seizure, p. 161. The leading federal case on stopping and searching automobiles is *Carroll* v. *United States,* supra, decided in 1925, in which the Supreme Court of the United States broadly stated that persons who are lawfully within the country and who are entitled to use the public highways have a right to free passage, without interruption or search, unless competent authorities have reason, amounting to probable cause, to believe that their vehicles are carrying contraband or illegal merchandise. "The fact that the suspects were in an automobile is not enough. *Carroll* v. *United States, supra,* liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirements for a warrant on grounds of practicality. It did not dispense with the need

for probable cause." *Henry* v. *United States,* 361 U.S. 98, 104. "The doctrine of the Carroll case remains good constitutional law to this day, though certain refinements (generally in the direction of granting officers even greater leeway in regard to automobile searches) have since been made." Landynski, Search and Seizure and the Supreme Court, p. 91. Even though the reasonableness of the search did not depend on the existence of a warrant, the automobile was nevertheless held to be a constitutionally protected area, and the fourth amendment did impose certain standards on police officers.

"The right to search motor vehicles is . . . subject to several qualifications. The primary test, as laid down by the Supreme Court, is that searches of motor vehicles must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible." Note, 10 A.L.R.3d 314, 319. The general standard of reasonableness of the search of an automobile without a warrant is one of "probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction . . . ." *Carroll* v. *United States,* supra, 149. In *Patenotte* v. *United States,* 266 F.2d 647, 650, five criteria are listed which are relevant in establishing probable cause to search vehicles: (1) reputation of, or informant's reports concerning, the occupants; (2) a like reputation of the vehicle or owners; (3) the condition of the vehicle (e.g., heavily loaded); (4) information from reliable informers as to the existence and illegal purpose of the alleged trip; and (5) the reputation of the location in which they are found. See Gay & Prunier, The Policeman and the Accused, p. 43.

"It is not necessary for an officer to have sufficient evidence to establish guilt in order to show probable cause. On the other hand, probable cause must be more than mere suspicion." Davis, op. cit., p. 271. "Mere suspicion or belief is generally an insufficient justification for such a search . . . ." 79 C.J.S. 839, Searches and Seizures, § 66. Mere suspicion will not amount to probable cause. See *United States* v. *Law,* 190 F. Sup. 100, 103; *Kraemer* v. *State,* 60 So. 2d 615, 617 (Fla.); *State* v. *Valentin,* 74 N.J. Super. 502, 508; *People* v. *Jordan,* 37 Misc. 2d 33 (N.Y.); *Bates* v. *State,* 96 Okla. Cr. 202, 204; 1 Orfield, Criminal Procedure under the Federal Rules § 4.23, p. 161, n.16; 47 Am. Jur., Searches and Seizures, § 22. " 'Arrest on mere suspicion collides violently with the basic human right of liberty.' " *Henry* v. *United States,* 361 U.S. 98, 101. "[T]he courts will look to the facts and circumstances known to the officer when the arrest was made." *Gorlack* v. *Ferrari,* 184 Cal. App. 2d 702, 709.

"We turn then to the question whether prudent men in the shoes of these officers . . . would have seen enough to permit them to believe that . . . [defendants were] violating or had violated the law. We think not. . . . The fact that afterwards contraband was discovered is not enough. An arrest is not justified by what the subsequent search discloses . . . ." *Henry* v. *United States,* supra, 102-3. It is clear to the court that the car was stopped, and the search was made, not because of any offense being committed in the presence of officers, nor because of any information possessed by the officers that the defendants had committed or were about to commit a criminal offense. The car was stopped because and only because of the suspicion of the officers, and this is fully and amply demonstrated in their testimony. The taking of the contraband under the circumstances disclosed by the record

constituted a search. The arrest of the defendants was not made until after the search. Since this search was not conducted pursuant to a valid search warrant, was not incidental to a legal arrest, and was not by consent of the defendants, it was an illegal search.

The articles seized are not admissible against the defendants upon their trial on the charge of illegal possession of narcotics and drugs. To that extent the motions are granted. The articles seized constituted contraband. So much of the defendants' motions which seeks a return of the articles is denied.