STATE OF CONNECTICUT *v.* OREN W. SCHINDLER

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 4—decided July 6, 1967

*James D. Cosgrove,* public defender, for the appellant (defendant).

*Edward J. Daly, Jr.,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

RYAN, J. The defendant, in a trial to the jury, was convicted of breaking and entering a dwelling house with intent to commit a crime therein in violation of § 53-73 of the General Statutes, and of the crime of larceny in violation of § 53-63. Thereafter he pleaded guilty to the second part of the information charging him with being a second offender under § 54-118. The defendant was represented in the trial by the public defender for the Circuit Court in the twelfth circuit who appeared for him at the hearing in probable cause in the Circuit Court and who, at the request of the public defender for the Superior Court in Hartford County, was appointed by the Superior Court to represent the defendant in that court. After the conviction and sentencing in the Superior Court, the defendant requested that an appeal be taken. His counsel informed the defendant that he did not believe an appeal was warranted. The defendant then wrote to the trial judge requesting that an attorney be appointed to

represent him on the appeal. Pursuant to the procedure outlined in *State* v. *Fredericks,* 152 Conn. 501, 208 A.2d 756,[1] the trial judge appointed the public defender of the Superior Court for Hartford County to review the case and determine whether there was substantial error which he could assign on appeal. The file was reviewed, and an appeal was taken.

The defendant assigns error in the admission into evidence of certain money which the defendant took from his pockets at police headquarters after he was asked by a detective to do so. The defendant concedes that he made no objection to the offer of the money in evidence by the state as an exhibit. He claims that, even though no objection was made, the issue to be determined is whether a right guaranteed to the defendant by the fourth and fourteenth amendments to the constitution of the United States was violated by an illegal search and seizure as prohibited by *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. He urges that pursuant to the holding in *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189, and *State* v. *Vars,* 154 Conn. 255, 224 A.2d 744, the failure to object as required by the Connecticut rules of practice does not bar him from asserting the denial of a federal right on appeal.

In the *O'Connor* v. *Ohio* case, the Supreme Court of the United States was considering a situation wherein the defendant failed to object at the trial to the prosecutor's comment upon the defendant's failure to testify. Following the conviction, the United States Supreme Court in *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106,

[1] See *Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (decided subsequent to the appeal in the present case).

for the first time prohibited comment in a state court on the failure of an accused to testify. Thereafter, *Tehan* v. *Shott,* 382 U.S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453, held that the rule of the *Griffin* case should apply retrospectively only to cases pending on direct review at the time of the announcement of the *Griffin* decision. *State* v. *Vars,* supra, 270. The Supreme Court of the United States in the *O'Connor* case held (p. 93): "[I]n these circumstances the failure to object in the state courts cannot bar the petitioner from asserting this federal right. Recognition of the States' reliance on former decisions of this Court which *Griffin* overruled was one of the principal grounds for the prospective application of the rule of that case. See *Tehan* v. *Shott,* 382 U.S. 406, 417 [86 S. Ct. 459, 15 L. Ed. 2d 453]. Defendants can no more be charged with anticipating the *Griffin* decision than can the States. Petitioner had exhausted his appeals in the Ohio courts and was seeking direct review here when *Griffin* was handed down. Thus, his failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court."

The instant case was tried in September, 1965, some four years after the decision in *Mapp* v. *Ohio,* supra. Not only did the defendant fail to object but he affirmatively stated when the evidence was proffered: "No objection." The trial court was never asked to rule on this claim, and under the established rule of Connecticut practice it cannot now be considered. If consideration were permitted, it would allow defense counsel to wait until the trial was completed before seeking to have the evidence excluded. The state then would be at a complete disadvantage since it would be unable to obtain a

finding sufficient to permit a just review, because the necessary evidence on which to predicate a finding would not have been introduced. *State* v. *Darwin,* 155 Conn. 124, 143, 230 A.2d 573. The defendant must be held to have known, at the time of trial, that the rule of *Mapp* v. *Ohio,* supra, was binding on the states and that Connecticut had long before accepted and consistently applied the *Mapp* rule. See *State* v. *DelVecchio,* 149 Conn. 567, 573, 182 A.2d 402 (decided more than three years before the trial of the present case); *State* v. *Collins,* 150 Conn. 488, 489, 191 A.2d 253. The rule of *O'Connor* v. *Ohio,* supra, provides no justification for the failure of the defendant to conform to Connecticut's procedural rule. Had he raised the claim, there is no reason to believe that, if it was well taken on the facts, the court would not have sustained it. The holding of the *O'Connor* case has no application to the claim of error assigned by the defendant and is of no assistance to him in this case.

The defendant also assigns error in the refusal of the trial court to find the material facts set forth in the draft finding. This claim is urged in connection with the issue raised by the defendant's assignment of error and is stated in his brief as follows: "Was all the evidence which was offered by the State sufficient to warrant the jury in convicting the defendant of the crime of breaking and entering with criminal intent?" To review this assignment of error, a finding was unnecessary and should not have been requested since the claimed error could be tested by the evidence alone. *State* v. *Jones,* 153 Conn. 451, 455, 217 A.2d 691; *State* v. *Mariano,* 152 Conn. 85, 100, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962; *State* v. *Salvaggio,* 152 Conn. 716, 717, 210 A.2d

175; *State* v. *Amendola,* 152 Conn. 166, 168, 204 A.2d 836.

From the evidence presented, the jury could have found the following facts: On July 16, 1965, Bonnie Barile of 51 Judson Avenue, East Hartford, returned to her home at about 5 p.m. and discovered that drawers had been pulled out, that the house had been ransacked, that a pane of glass was broken in the back door, and that $135 belonging to her had been stolen. The money was in the following denominations: two new twenty-dollar bills, two other twenty-dollar bills, one or two ten-dollar bills, three five-dollar bills, and the rest of the money in one-dollar bills. Entrance to the house was gained by breaking the glass in the back door, inserting a hand through the opening, turning the handle of the locked door and opening it. There were several chips of glass remaining in the door over which the hand and wrist of the intruder would have to pass in order to reach the door handle. The police learned that the defendant, an uncle by marriage of Bonnie Barile, had been on the premises of 51 Judson Avenue that day. William Pottinger, an East Hartford police detective, while investigating the case, received information that the defendant was in a yard on Laurel Street in East Hartford. When the detective arrived there at 6:30 p.m., he noticed that the defendant had been drinking to the point of intoxication and was somewhat incoherent and belligerent. The defendant was wearing a pair of dark pants and a short-sleeved shirt. The shirt had some spots on it. He was taken to police headquarters. There it was noticed that he had a fresh scrape on the lower part of his right wrist, and, as he swung his arm, it "matched up" with the spots on the shirt which appeared to have come from the

defendant's having rubbed his wrist against his shirt. At police headquarters the defendant was asked to empty his pockets. From one pocket he took out four twenty-dollar bills, of which two were new, one ten-dollar bill, four five-dollar bills, and twenty-three one-dollar bills, making a total of $133. From another pocket he removed $3.70 in change. Originally, the defendant told the police that he got this money from his job. Actually, the defendant had been released from the state prison that same day and did not have a job. The defendant later testified that he won the money gambling. On release from prison the defendant was given $23 by the prison officials. The Connecticut Prison Association in Hartford gave him $20. He spent some of the money for food, and $10 for a room. From the fact that he was intoxicated when apprehended, it is a reasonable inference that some of the money was spent for liquor.

In summary, the jury could have found that the crimes charged were committed sometime before 5 p.m., that the defendant was on the premises where the crimes were committed, that the defendant was arrested about 6:30 p.m., that the intruder had to stick his hand and wrist through a broken pane of glass to unlock the door to gain entrance to the dwelling, that the defendant had fresh scratches on his wrist which matched spots on his shirt as he moved his arm, and that he had in his possession a sum of money, in denominations and amount, remarkably similar to the denominations and amount of the money which was stolen. There was ample evidence to prove the guilt of the defendant as charged.

There is no error.

In this opinion the other judges concurred.