## State of Connecticut *v.* Ort Mortoro

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued December 11, 1968—decided January 8, 1969

*Joseph E. Moukawsher,* for the appellant (defendant).

*C. Robert Satti,* assistant state's attorney, with whom, on the brief, was *Edmund W. O'Brien,* state's attorney, for the appellee (state).

HOUSE, J. The defendant was tried by a jury on a substituted information which charged him with attempting to hinder and prevent a state witness in violation of § 53-148 of the General Statutes. The jury returned a verdict of guilty. The court denied the defendant's motion to set aside the verdict as contrary to law and against the evidence, and from the judgment rendered on the verdict the defendant has appealed, assigning error in the court's denial of the motion as well as certain other errors claimed to have occurred in the course of the trial. Several of the latter claims were raised for the first time on the appeal, and these we do not consider. Practice Book § 652; *State* v. *Smith,* 156 Conn. 378, 386, 242 A.2d 763; *Gulia* v. *Ortowski,* 156 Conn. 40, 44, 238 A.2d 396; *State* v. *Costa,* 155 Conn. 304, 306, 232 A.2d 913.

The portion of § 53-148 under which the defendant was charged makes it a criminal offense to attempt to hinder or prevent any person summoned or who may be used as a witness in any civil or criminal proceeding from appearing as a witness or from giving his testimony in any such proceeding. The denial of the defendant's motion to set aside the verdict is tested in the light of the evidence printed in the appendices to the briefs. *State* v. *Gyuro,* 156 Conn. 391, 397, 242 A.2d 734, cert. denied, 393 U.S.

937, 89 S. Ct. 301, 21 L. Ed. 2d 274; *State v. Schindler,* 155 Conn. 297, 301, 231 A.2d 652.

The appendices properly disclose in detail the evidence which the jury had for consideration. Practice Book §§ 716–22. On September 13, 1966, Robert S. Daly, an inmate of the state jail, was taken by a guard to the courtroom for the Circuit Court in the tenth circuit in Norwich, pursuant to a writ of habeas corpus ad testificandum, to testify as a witness for the state in bind-over hearings in connection with prosecutions against the defendant and Alexander Desimone. The hearing in the case against the defendant was continued for one week for him to obtain counsel, but the hearing in the case against Desimone was presented, and Daly took the witness stand and testified. The substance of his testimony in the present case was that he knew the defendant and Desimone, that the defendant operated jukeboxes at his place of business, that Desimone told Daly that the defendant wanted Desimone to mess up the jukeboxes of one of the defendant's competitors with glue, that in Daly's presence the defendant gave Desimone some money and told him to do a good job, that thereafter Daly was present when Desimone poured a glue compound over the keyboard of the competitor's jukebox, after which Desimone telephoned the defendant at the latter's place of business and, the defendant being absent, told the party who answered to tell the defendant that he (Desimone) had done a good job. After testifying in the hearing against Desimone, Daly was taken to the jury room at the rear of the courtroom to await transportation back to the jail. The guard stood near the doorway of the jury room. He was wearing a jacket and does not recall whether his badge was visible. The most direct route out of the

courtroom from where the defendant had been sitting with Mrs. Desimone was by the aisle against the wall next to the exit. When court adjourned, the defendant walked up the center aisle and turned to his right toward the jury room. He stopped about three or four feet from where the guard was standing, pointed his finger at Daly, who was about three feet behind the guard and inside the jury room, and in a very stern, serious voice said to Daly: "I don't forget, remember that." The guard testified that Daly "became very nervous and appeared to be afraid, shaking." The guard summoned a state police officer who was entering the courtroom as the defendant was walking out; that officer conferred with the prosecuting attorney and then arrested the defendant.

On this evidence the jury could reasonably and logically find that the incident was not "only an emotional outburst" on the part of the defendant, as he claims, but that he was guilty, as charged, of the crime of attempting to hinder or prevent Daly from appearing as a witness or from giving his testimony in the cases against the defendant and Desimone. There was, accordingly, no error in the court's denial of the motion to set aside the verdict as contrary to the law and evidence.

The defendant's second assignment of error is that the court erred in finding without evidence that Daly had gone to California in January of 1966 because his life had been threatened. Since this trial was to the jury, the court itself made no finding of facts but, as provided by Practice Book § 629 and in conformity with Practice Book Form 603(B), made a finding that "the state offered evidence to prove and claimed that it had proven" certain facts, including that to which objection is made. The record as well

as the defendant's appendix indicates that without objection Daly testified that he went to California in January, 1966, "[b]ecause my life had been threatened here in Norwich." There is no merit to this assignment of error.

The next properly raised assignment of error is that the court erroneously admitted into evidence the testimony of Daly that, after he and Desimone at the request of the defendant had poured a glue and Coca-Cola compound over the keyboard of a jukebox belonging to a competitor of the defendant, they went to a doughnut shop, and Desimone telephoned the defendant, who was not in, but Desimone told the party who answered the telephone to "tell Ort that he did a good job." Over objection to permitting Daly to testify to what he heard Desimone say, the court permitted the testimony, not for the truth of the statement made but as a verbal act. The ruling was a permissible one. In the circumstances of this case, the evidence was very relevant. To prove the defendant guilty of the crime charged against him in the present case, it was incumbent on the state to establish that Daly was at least a potential witness in the then pending proceedings against Desimone or the defendant, or both, and that a threat was made to Daly by the defendant for the purpose of hindering or preventing Daly's testimony in those proceedings. Accordingly, it was proper for the state in the present case to show Daly's relationship with these men and his knowledge of facts relating to the crimes with which they were charged, i.e., inciting damage to private property. It was particularly relevant in view of the claim of the defendant that he knew nothing of that charge pending against him or that Daly would be a witness against him or Desimone. The statement

was not hearsay and was properly admitted as ear-witness testimony to a verbal act. *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 80, 157 A.2d 241; *State* v. *Tolisano,* 136 Conn. 210, 214, 70 A.2d 118.

The remaining assignment of error which requires discussion stems from the testimony of the defendant which we have just mentioned, i.e., that, at the time he spoke to Daly in the Circuit Court courtroom, he did not know any details of the charges pending against him or that Daly was to be a witness against him. In rebuttal, after the defendant had rested, the state introduced testimony from Robert J. Papp, a state police officer, that he had arrested the defendant on August 18, 1966, on a warrant charging him with inciting injury to private property and accessory to wilful injury to personal property, that he had shown and read the warrant to the defendant and that, while he had the defendant in custody, he had informed him that he was charged with having hired Desimone to do damage to a jukebox which was owned by the Stephens Amusement Corporation and was located in Ruth's Country Kitchen in the town of Griswold. The state thereupon rested. The defendant then sought to return to the witness stand "to tell his side of this conversation." The court refused to allow the case to be opened since Papp's testimony had been strictly limited to rebuttal of the claim of the defendant of lack of knowledge of the charges against him, and to permit further testimony from the defendant in an attempt to rebut Papp's rebuttal would allow the case to "go on ad infinitum." The observation was pertinent. The defendant had previously testified fully on the matter on direct examination and on cross-examination, there was no particular offer of

proof, and there was not then, nor has there been suggested on this appeal, any way in which the defendant was prejudiced by the ruling. We do not find any error in the ruling.

There is no error.

In this opinion the other judges concurred.