STATE OF CONNECTICUT *v.* LEWIS E. GREENWALD

FILE No. CR-11-10573

STATE OF CONNECTICUT *v.* ROBERT W. DRANE

FILE No. CR-11-10578

STATE OF CONNECTICUT *v.* KAREN T. DELLA SALA

FILE No. CR-11-10568

STATE OF CONNECTICUT *v.* JUDITH L. DAZIENS

FILE No. CR-11-10574

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued October 6—decided November 14, 1969

*Richard A. Kelley,* public defender, for the appellants (defendants).

*James N. Oliver, Jr.,* prosecuting attorney, for the appellee (state).

KINMONTH, J. These cases arose out of the same situation, were tried together and were combined on appeal. They are factually similar, and the issues on appeal are the same. The defendants have appealed, assigning error in that (1) the judgments were based on grounds which violated the defendants' rights under the first and fourteenth amendments to the constitution of the United States; (2) the court's interpretation of § 53-174 of the General Statutes was unconstitutionally vague and overbroad, and (3) on all the evidence the court found the defendants guilty beyond a reasonable doubt. Upon this last assignment of error, we determine from the entire evidence whether the court erred in holding guilt was established by the requisite degree of proof. *State* v. *Schindler,* 155 Conn. 297, 301; *State* v. *Pundy,* 147 Conn. 7, 8.

The evidence and the reasonable inferences which the court could draw therefrom may be summarized as follows: On December 10, 1968, about 100 state police officers went to the University of Connecticut campus in Storrs, Connecticut, at the request of the president of the university, to render police assistance to prevent disruptions of employment interviews at a building known as the "warming hut," located south of the skating rink on the campus. A two-strand chain fence partially surrounds the area

about the warming hut, and troopers were dispersed inside this fence and to the rear between the warming hut and the skating rink. Small groups, carrying signs on the general subject of peace, took positions on the road south of the warming hut and maintained a vigil. About 1 p.m., there were 100 or so people gathered, and at about that time a group of approximately 150 people came marching from the north corner of the skating rink and joined the 100 people already there. At 1:12 p.m., on instruction from the commissioner of state police, the riot act was read twice to the gathered crowd by the executive officer of the state police. Two members of the group made speeches exhorting the group to move closer to the entrance gateway, the break in the fence which leads directly to the front door of the warming hut, and to force their way to the warming hut for the purpose of disrupting the employment interviews. The commissioner and the executive officer of the state police were not wearing uniforms but were displaying their badges, and they were standing shoulder to shoulder at the break in the fence on the walk which leads up to the entrance to the warming hut. State troopers, in uniform, were behind the gate and along the fence. The commissioner instructed the troopers to arrest anyone who forced his way through the gate. A line of male and female students formed, and sixty-six students pushed their way, with force and by actual physical contact with the commissioner and the executive officer, through the gate. The four defendants were part of the sixty-six forcing their way through the gate by the use of physical force and actual contact with the commissioner and the executive officers, and were arrested, along with others. The commissioner had sore ribs as the result of the actions and force used by the students. Each defendant said he was influenced in his state of mind

by a statement issued November 26, 1968, over the signature of the president of the university, which in substance stated that the university acknowledged the right of dissent and protest but at the same time "recognized the importance of acknowledging the line between peaceful protest against placement interviews and wilful obstruction and disruption of the same."

The defendants' second assignment of error need not be considered, for they admit in their brief that they do not challenge the constitutionality of our breach of the peace statute but rather the court's interpretation of the statute. This assignment apparently is directed to the court's finding, but, as stated above, on a general assignment of error we review the entire evidence, and therefore a finding was unnecessary and should not have been requested since the claimed error could be tested by the evidence alone. *State* v. *Schindler,* supra.

The defendants' first assignment of error might well, as it is worded, suffer the same fate as their second assignment, but we have decided to treat it in its broader sense. It has long been established that the freedoms guaranteed by the first amendment are protected through the fourteenth amendment to the United States constitution from invasion by the states. *Snyder* v. *Newtown,* 147 Conn. 374, 380. The first amendment to the United States constitution guarantees the rights of freedom of speech and peaceable assembly, and the United States Supreme Court has protected these rights in cases too numerous to cite. Suffice it to say that the United States Supreme Court in *Cantwell* v. *Connecticut,* 310 U.S. 296, upheld the breach of the peace statute in issue here, although it reversed the Connecticut Supreme Court on the evidence *(State* v. *Cantwell,* 126 Conn. 1), and said (p. 309): "One

may, however, be guilty of the offense if he commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended." And the court further stated (p. 310) that "personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."

The defendants contend that they were merely exercising the constitutionally protected right of peaceable assembly and thus could not be guilty of breach of the peace. We cannot go that far. It is clear from the decisions of the United States Supreme Court that free speech and the right of peaceable assembly in public places must not be left to the ad hoc discretion of provincial authorities. There is a difference, however, between public and private places, and in this context we regard the premises of a college or university as no different from private property. That the institution is financed with tax money is no reason why its governing body should not have the same dominion and control over it as would a private owner. The university had the right to restrict its students from entering certain premises. When the students used force, they went beyond their protected rights. Neither in *Cantwell* v. *Connecticut*, supra, nor in any other decision which has been brought to our attention has the United States Supreme Court held that the common-law crime of breach of the peace has been abrogated by the constitution. See *O'Leary* v. *Commonwealth*, 441 S.W.2d 150 (Ky.).

The right lawfully and properly to exercise a constitutional right, such as the right of peaceable assembly, for whatever purpose is well established, but a purportedly peaceable assembly may and can

go beyond the protection of the constitution. When violence or other action goes so far as to deprive others of their equal right to the exercise of their liberties, then the transgressions of those limits are punishable by the states. The defendants in the instant case deliberately took the action they did. The act itself, irrespective of motive, constitutes the crime. Affirmative proof of an intent to do the prohibited act is not required, there being a permissible inference from the doing of the act that the defendants were responsible for their actions. Intention is a mental process and may be proved by the fair inference which may be drawn from the acts or conduct of the person charged with harboring it. *State v. Guerra,* 151 Conn. 159, 165; *State v. Mazzadra,* 141 Conn. 731, 735.

The defendants' constitutional rights have not been violated. There is ample evidence to sustain the finding of guilty. It was the claim of the state that the statute was violated by "assaulting or striking another." No other part of § 53-174 seems pertinent to the charge. "A battery is where there is an actual striking, or touching the body, which includes an assault. . . ." 2 Swift, Digest, p. 338 (1823); *State v. Timney,* 2 Conn. Cir. Ct. 644, 647.

There is no error.

In this opinion Kosicki and Dearington, Js., concurred.