STATE OF CONNECTICUT *v.* CHARLES H. MOGULNICKI

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 9-10023

Argued June 2, 1969—decided January 9, 1970

*Brian L. Hollander* of Hartford, for the appellant (defendant).

*Dennis F. Gaffney,* assistant chief prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant, having been found guilty of violating § 53-295 of the General Statutes in a trial to the jury, has appealed. His appeal relates entirely to the denial of his motion to dismiss the information, and in that respect he assigns error in that (1) the legality of his arrest was not improperly raised by his motion to dismiss; (2) his arrest without a warrant transgressed the fourth amendment to the constitution of the United States, operating through the fourteenth amendment; (3) the arrest was unlawful in that the arresting officer avoided obtaining an arrest warrant; (4) the arrest was illegal under § 6-49 because the defendant was not observed, at the time of arrest, committing any illegal act; and (5) the court erroneously took into consideration evidence seized after the arrest.

Following the preliminary hearing on the motion to dismiss, a finding was made which has not been challenged. The court found the following facts: Robert Keller of the criminal intelligence division of the state police was assigned in an undercover capacity at the Standard Knapp Division of the Emhart Corporation, located in the town of Portland, to ascertain if one of its employees was accepting bets. The trooper had been a member of this division for eleven months and had worked on twelve prior pool selling cases. The employee under surveillance was the defendant. On November 29,

1967, the trooper commenced his assignment, but on that day and the following day he was uncertain as to whom he was supposed to be watching. On December 1, at 12 noon, he observed three males seated at a bench, reading the National Armstrong Daily and talking, when the defendant approached them with a large roll of United States currency in his right hand. One of the men handed the defendant a slip of paper together with an unknown amount of currency which the defendant added to that in his hand and then placed the currency in his pocket. The trooper knew from his experience in pool selling that the National Armstrong Daily contained information relating to racetracks and horse racing and is commonly used by bookmakers and players engaged in pool selling. At 12:30 p.m. on the same day, the trooper observed the defendant, holding a piece of white paper in his hand, enter a telephone booth and speak on the telephone for seven minutes while appearing to read from the paper. At 1:40 p.m., the trooper observed the defendant accept a slip of paper and an unknown amount of currency from a man at the water fountain located in the factory. At 2:14 p.m., the defendant made another telephone call of two or three minutes. The trooper knew, from experience, that telephone calls relating to bookie activities are made between 11 and 11:30 a.m. and between 2 and 2:30 p.m. On December 4, 1967, after 7:30 a.m., the trooper observed the defendant leave his work area three times and meet with three different people. At 11:18 a.m., the defendant was observed accepting a slip of paper from a man. Between 10 a.m. and 12:15 p.m., four men were observed approaching the defendant and handing slips of paper to him in a secretive manner. All the meetings between the defendant and other persons were characterized by the trooper as secretive. At 12:15 p.m., a fourth man handed a slip of paper

to the defendant. At this time the trooper approached the defendant and identified himself and took from the bench in front of the defendant a copy of the New York Daily News containing several pieces of paper of various sizes and colors. The defendant had been studying, sorting and examining these papers before the trooper identified himself.

At the time of arrest the defendant's hands were empty. The trooper did not observe the last man give any money to the defendant, nor did he know what was on the slip of paper handed the defendant by this man. The trooper seized nine slips of paper which the defendant had been sorting through and examining. These papers contained horse bets at various tracks which were open at that time, and they also listed various amounts of money. All the horses listed on the nine slips were listed in the New York Daily News as running on that day. The defendant had been placed under arrest before the seizure of the slips of paper and the newspaper. Prior to the seizure the trooper did not know what the papers contained, nor did he overhear the telephone conversations. He made no inquiry as to whether the bench in front of the defendant had been assigned to the defendant.

As a result of the foregoing finding, the court reached the following conclusions: (1) Trooper Keller was an undercover agent seeking to catch a person booking bets at the factory. (2) Trooper Keller observed the defendant for several days in his activity at the factory. (3) He observed the defendant accepting slips on various occasions in a secretive manner and making secretive telephone calls. He observed money exchanged. (4) The overall observations of the defendant and his activities led the trooper to believe the defendant was involved in illegal gambling activities.

We first consider whether the questions relating to the constitutionality of the defendant's arrest which were ruled on by the judge who heard the matter at the preliminary hearing are properly before this court for review. The state contends that only errors "distinctly raised at the trial and . . . ruled upon and decided by the court adversely to the appellant's claim" may be considered on appeal. Practice Book § 652. In our treatment of this matter, it becomes unnecessary to pass on this question. The desirability of raising a constitutional question at a trial on the merits is, however, emphasized in *State* v. *Sul,* 146 Conn. 78, 83. See *State* v. *Taylor,* 153 Conn. 72, 86.

The defendant further claims that his warrantless arrest was unlawful under the fourth amendment because at the moment of his arrest the trooper had no probable cause to believe he was committing a crime. In the beginning, it should perhaps be noted that in determining whether probable cause had been established we are concerned only with the facts appearing in the finding which arose from the observations of the trooper and had come into operation prior to the actual arrest of the defendant. The defendant cites *Beck* v. *Ohio,* 379 U.S. 89, 96, to the effect that when the constitutional validity of an arrest is challenged "it is the function of the court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." See *Wong Sun* v. *United States,* 371 U.S. 471, 479; *Carroll* v. *United States,* 267 U.S. 132, 162. In *Beck,* the only evidence produced was the officer's knowledge of the defendant's physical appearance and record and that someone (he did not say who) had told the officer something (he did not say what) about the defendant. The court held that such

evidence was not enough to meet the test. We do not construe the words "the facts available to the officers at the moment of the arrest" to mean that all allegedly incriminating facts shall immediately come into operation "at the moment of the arrest." If this were so, a surveillance over a period of time would be worthless. Rather, we construe this requirement to mean that at the time of the arrest the officer must then be in the possession of and be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* 392 U.S. 1, 21. In *Henry* v. *United States,* 361 U.S. 98, 103 the court said, in passing on the legality of an arrest: "It is, therefore, necessary to determine whether at or *before* that time [the arrest] they had reasonable cause to believe that a crime had been committed." (Emphasis added.) In *State* v. *Spellman,* 153 Conn. 65, 69, dealing with the legality of a warrantless arrest, the court quoted from *State* v. *Reynolds,* 101 Conn. 224, 229, to the effect that " 'if the circumstances then observed by him [the officer], taken in connection with those before observed by him when weighed in the light of common knowledge, gave him probable reason or ground to believe that such a crime [keeping alcoholic liquor with intent to sell] was being, or was about to be, committed,' " the arrest was legal. The argument that the alleged conduct of the defendant was limited to the precise moment of his arrest is without legal support.

It is true, as argued by the defendant, that evidence of otherwise innocent or innocuous acts by themselves are not enough to establish a finding of probable cause. The cases cited by the defendant, such as *Sibron* v. *New York,* 392 U.S. 40, *Henry* v. *United States,* supra, 104, and *State* v. *Kehlenbach,* 4 Conn. Cir. Ct. 376, 381, are to the effect that an

innocent act of a suspicious nature is not in itself adequate to give rise to the reasonable inference required to support a finding of probable cause. It has long been the law in this state that conjecture or suspicion in and of itself does not amount to probable cause. *Stone* v. *Stevens,* 12 Conn. 219, 229. See such cases as *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 462, *State* v. *Foord,* 142 Conn. 285, 295, and *Fitch* v. *State,* 138 Conn. 534, 541, which, although not specifically dealing with probable cause, do relate to the weight to be accorded evidence of a conjectural nature. But it is also true that "probable cause 'is a practical nontechnical conception.' Brinegar v. United States [338 U.S. 160, 176] . . . . [N]o particular element must always be present; the presence of no one element is invariably conclusive. The presence or absence of probable cause is to be determined 'in the light of . . . all the circumstances.' *Ibid.* . . . [I]t is immaterial that each circumstance, taken by itself, may be consistent with innocence." *Hernandez* v. *United States,* 353 F.2d 624, 628. "As we have often observed, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total. It has often been repeated, but it bears repetition, that 'In dealing with probable cause, . . . as the very name implies, we deal with *probabilities.* These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar* v. *United States* [338 U.S. 160, 175] . . . . (Emphasis added.)" *Smith* v. *United States,* 358 F.2d 833, 837. "The investigating agent is not required to separate particular facts from the context of the case or to discover their significance

alone. For they are not alone, and the reasonable mind does not evaluate them alone." *United States v. Bianco,* 189 F.2d 716, 720. "The amount of evidence necessary to furnish probable cause for an arrest without a warrant is to be measured by the facts of the particular case, and it need not be evidence sufficient to convict." *State* v. *Elliott,* 153 Conn. 147, 152; *State* v. *Allen,* 155 Conn. 385, 393. Thus, probable cause is predicated on everything a trained officer hears, knows and observes. *State* v. *Towles,* 155 Conn. 516, 520; *State* v. *Elliott,* supra; *State* v. *Spellman,* 153 Conn. 65, 69; *State* v. *DelVecchio,* 149 Conn. 567, 574; *State* v. *Reynolds,* 101 Conn. 224, 229.

"An accused is lawfully 'taken or apprehended in the act' if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed." *State* v. *DelVecchio,* supra, 575. If we apply these tests to the facts found, we conclude that the reliability of the basic information upon which the trooper acted was demonstrated before the arrest by his observations of the defendant's conduct and that that conduct, viewed in the light of the trooper's training and experience, was consistent in its totality with the probability that the defendant was engaged in the crime of pool selling. The only element remaining unverified was the contents of the slips of paper, which, however, we do not consider in determining whether probable cause had come into existence, since the seizure was subsequent to the arrest.

The defendant also assigns error claiming that his arrest was illegal under the fourth amendment because the trooper did not first obtain an arrest warrant. The defendant cites a number of federal

cases to the effect that an "arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the . . . search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." *Beck* v. *Ohio*, 379 U.S. 89, 96. But, as *Beck* also held (p. 96), "[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll* v. *United States*, 267 U.S. 132, 162. If the court is not informed of the facts upon which the arresting officers acted, it cannot properly discharge that function." In the instant case the court was fully informed of the facts on which the arresting officer acted. There was no evidence that the trooper engaged in hindsight judgment; on the contrary, his action was characterized by foresight judgment. The arrest fully met the requirements of § 6-49 and no warrant was necessary.

The defendant further contends that the arrest was illegal on the ground that it was made at a time when the defendant was not observed committing a crime. The surveillance extended over a period of several days, and the finding indicated that the defendant's activities, being continuous in nature, extended to the point of arrest. Accepting slips of paper in a secretive manner from four men, the last transaction occurring just before the arrest, was consistent, viewed in the light of the defendant's prior activities, with the probability that the defendant was engaged in pool selling. The arrest was not violative of § 6-49, and there was no delay in making the arrest. See *State* v. *Hodge,* 153 Conn. 564, 567 (effect of delay in making an arrest).

Finally, the defendant assigns error claiming that the court in reaching its conclusions took into consideration certain evidence seized after the arrest. The court found that the trooper, subsequent to the arrest, seized the newspaper that the defendant had been scanning at the time of his arrest—the New York Daily News—and nine pieces or slips of paper being handled by him, each purporting to contain bets on horse racing. The defendant contends that the issue of probable cause must be determined on the facts available to the officer at the moment of arrest; *Beck* v. *Ohio,* supra; *Henry* v. *United States,* 361 U.S. 98, 103; that is, the results of a search or seizure cannot be used to sustain the finding of probable cause. This is a correct statement of our law. *State* v. *Spellman,* 153 Conn. 65, 71; *State* v. *DelVecchio,* supra. This is not to say, however, that such evidence would not be available to the state at a subsequent trial on the merits. *State* v. *Towles,* 155 Conn. 516, 521; *State* v. *Allen,* 155 Conn. 385, 393. One reason that reference to such documents appears in the finding may be because no objection was made to their admission in evidence. *State* v. *Schindler,* 155 Conn. 297, 300, 301. Furthermore, unless a constitutional question is raised during a judicial proceeding it may be considered that such a question has been waived. *Kenmike Theatre, Inc.* v. *Moving Picture Operators,* 139 Conn. 95, 100; 16 Am. Jur. 2d, Constitutional Law, § 131. Moreover, the finding has not been challenged. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 692. Aside from these considerations, however, we have limited our review to the facts in the finding, including the reasonable inferences to be drawn, which came into operation prior to the arrest. On these facts, independently of any property seized subsequent to the arrest, we have determined that probable cause had come into existence. Even if

the trial court improperly found facts which were not involved in the issue—and on the record it cannot be said that it erred in this respect—it would be a harmless error. *Avery* v. *Ginsburg,* 92 Conn. 208, 213; 5 Am. Jur. 2d, Appeal and Error, § 819. To put it in another way, if it is assumed that the defendant had moved to strike this part of the court's finding and the motion had been granted, the remaining part of the finding fully supported the court's ultimate conclusion that reasonable grounds existed for the finding of probable cause.

There is no error.

In this opinion KINMONTH and HERMAN, Js., concurred.