STATE OF CONNECTICUT *v.* GEORGE T. MARSHALL

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

594

Argued February 6—decision released July 9, 1974

*Igor I. Sikorsky, Jr.,* special public defender, for the appellant (defendant).

*Francis M. McDonald,* state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, George T. Marshall, was tried by a jury and found guilty of the crime of murder in the first degree. From the judgment

rendered on the verdict, the defendant has appealed, assigning as error several technical and substantive issues and claiming that reversible error occurred during the course of the trial.

The basic facts are not disputed. At the trial, the state offered evidence to prove and claimed to have proved that at about 1:30 p.m. on Sunday, March 22, 1970, the body of Joseph Vanasse was found by his father in the caretaker's cottage at Lake Hills Village, an apartment complex in the town of Wolcott. Vanasse occupied the cottage with his wife as part of his employment as caretaker of the complex. His death was caused by seven wounds inflicted by a .38 caliber firearm, and five such bullets were recovered from the victim's body and clothing by the police and by the pathologist who conducted an autopsy. He died sometime during a twenty-four-hour period commencing at 1:30 p.m. on the previous Friday afternoon.

The defendant and the victim were both prospective members of an organization known as the Aliens Motor Cycle Club and, although neither was arrested or charged with any crime in connection with the multiple rapes at Wallingford by the Slumlords motorcycle gang, they were present on that occasion. See *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723. Other Alien club members, including the president, Walter Ryan, had been charged with participation in that incident. On Friday morning before the shooting, the defendant told Ryan that he would like to kill Vanasse because he refused to contribute money to aid in the defense of those charged in the Wallingford rapes, and, that evening at Ryan's house, Ryan gave the defendant a .38 caliber Colt revolver and some car-

tridges. It was testified that bullets fired from this revolver caused the death of Vanasse. The defendant left Ryan's house about 1 a.m. with the revolver and the bullets, and between 2:10 a.m. and 2:20 a.m. he telephoned Ryan and his wife and requested them to tell anyone who asked that he had left their house at about 1:40 a.m. Later that same morning, while Ryan drove the defendant to a garage in Torrington where they both worked, the defendant told Ryan that he had gone to see Vanasse the previous night in Wolcott, where he drank beer with the victim and then shot him because Vanasse would not help raise money for the defense of those charged with the Wallingford rapes.

On the preceding Friday morning, Vanasse's wife had left the cottage with another man and did not return over the weekend. She left behind in the refrigerator six cans of Schaefer beer which she had previously purchased in Wolcott. On Saturday, Vanasse's father visited his son's cottage but he did not enter it. Through the partially open front door, however, he had seen a beer can on the coffee table. Five empty Schaefer beer cans were subsequently found in the cottage, four of which were in a wastebasket. One of those, as well as the beer can on the coffee table, bore the right thumbprint of the defendant.

On March 27, 1970, the police went to the defendant's home with a search warrant, and, in a shed in the rear of the house, they discovered the murder weapon and some cartridges.

The defendant's first assignment of error is predicated on the cumulative effect of the denial of two motions, rulings which the defendant claims constitute reversible error. At the commencement of

the trial, the defendant unsuccessfully moved to exclude from the courtroom, when the jury were excused and counsel were arguing the law or raising objections to the admissibility of evidence, the single newspaper reporter present. Also, during the trial but in chambers, the court denied the defendant's motion to examine the jury to inquire whether any juror had read an article in a local newspaper,[1] an article the defendant claimed was prejudicial. The court declined to poll the jury to see if they had read the article unless the defense counsel first moved for a mistrial. Counsel refused to do so, and the motion to poll the jury was denied. The defendant concedes that there was no affirmative showing of actual prejudice, but asserts that prejudice must be assumed because of the earlier denial of his motion to exclude the newspaper reporter and the later denial of his request to poll the jurors to inquire whether they had read the newspaper article. We find the defendant's thesis wholly untenable.

During the trial, the court repeatedly warned the jury at recesses not to read newspaper accounts or listen to the radio or watch television accounts of the proceedings. The newspaper article involved neither mentioned the defendant nor commented upon the evidence presented at the trial. It merely stated that one of the Slumlords' rape victims would testify as a rebuttal witness.[2] By no stretch of the imagination can the situation thus presented be com-

---

[1] "[Waterbury Republican, Thursday, November 5, 1970] The State then began rebuttal witnesses and late in the afternoon proposed to call to the stand Mary Albrycht, one of the victims in last year's Slumlord gang rape in Wallingford. Strong objections to the presentation of witnesses were made by Attorney Raymond J. Quinn, Jr., co-defense counsel, who urged Judge Armentano to discuss the matter in Judge's chambers."

[2] See footnote 1, supra.

pared to those where front-page headlines and numerous inflammatory articles over extended periods of time jeopardize a defendant's right to a fair trial. See *Sheppard* v. *Maxwell,* 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600. The court did not abuse its discretion in refusing to poll the jurors regarding the newspaper article and had properly and adequately charged the jury when they were impaneled and during the course of the trial not to read, listen to or watch media coverage of the trial. *Havey* v. *Kropp,* 458 F.2d 1054, 1057 (6th Cir.); *People* v. *Crovedi,* 49 Cal. Rptr. 724, 731–33, rev'd on other grounds, 65 Cal. 2d 725, 417 P.2d 868; *State* v. *Holloway,* 274 So. 2d 699, 701 (La.); notes, 15 A.L.R.2d 1152–53, 31 A.L.R.2d 417, 432–34; note, 3 L. Ed. 2d 2004, 2006; see *United States* v. *Hirsch,* 74 F.2d 215, 218–19 (2d Cir.), cert. denied, 295 U.S. 739, 55 S. Ct. 653, 79 L. Ed. 1686, rehearing denied, 295 U.S. 768, 55 S. Ct. 825, 79 L. Ed. 1709; A. B. A., Standards Relating to Fair Trial and Free Press (Tentative Draft) § 3.4 (c); article, 45 F.R.D. 391, 410, 413 n.38. Nor do we believe that the defendant had an absolute right to exclude the newspaper reporter from the trial. As the United States Supreme Court observed in *Craig* v. *Harney,* 331 U.S. 367, 374, 67 S. Ct. 1249, 91 L. Ed. 1546: "A trial is a public event. What transpires in the court room is public property. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."

As indicated in *Craig* v. *Harney,* supra, 375, it is conceivable that "a plan of reporting on a case could be so designed and executed as to poison the public mind, to cause a march on the court house, or other-

wise so disturb the delicate balance in a highly wrought situation as to imperil the fair and orderly functioning of the judicial process" or that comment on pending cases could create a "clear and present danger" to the administration of justice. There is nothing to suggest that such a situation existed in this case and we find no error in the rulings of the court.

The defendant next claims that the court erred in admitting testimony by Ryan, which the state offered as proof of the defendant's motive in killing Vanasse, that the victim had allegedly written a letter implicating the defendant in the rapes and other misdeeds which was to be turned over to the authorities if anything happened to him. The offer of proof was accepted by the court, and, over the defendant's objections, Ryan was permitted to testify regarding the Slumlord rapes, the alleged letter and the conversation with the defendant in which he admitted killing Vanasse. Also over the defendant's objections and for the purpose of showing "motive, malice, intent and premeditation," Mary Ryan, wife of the Aliens' president, was permitted to testify concerning the participation of the defendant and of Vanasse in the Slumlord rapes. While conceding that evidence of other crimes is admissible when relevant to prove intent or motive, the defendant claims that the probative value of this evidence was far outweighed by the prejudicial effect it created in the minds of the jurors, and that the court abused its discretion in admitting the testimony.

"Evidence of motive which suggests the doing of the act charged is always admissible and this is true even though such evidence shows or tends to show

the commission of another crime. Thus, where the motive for the crime charged is the concealment of some other crime, as by killing a . . . witness, the evidence of such other crime is admissible to show motive." 1 Wharton, Criminal Evidence (13th Ed.) § 247. In *State* v. *Simborski,* 120 Conn. 624, 630–31, 182 A. 221, it was stated thus: "The accused objected to the admission of this evidence upon the ground that it was evidence of the commission by the accused of separate and distinct crimes unconnected with that for which he was being tried. Evidence of the commission by the accused of crimes unconnected with that for which he is being tried when offered by the State in chief violates the rule of policy which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts and is therefore inadmissible for that purpose. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 Atl. 649. But the inadmissibility of an evidential fact for one purpose does not render it inadmissible for some other purpose otherwise proper. 1 Wigmore, Evidence (2d Ed.) § 215. That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material. *State* v. *Chapman,* 103 Conn. 453, 481, 130 Atl. 899; *Commonwealth* v. *Robinson,* 146 Mass. 571, 16 N.E. 452; Underhill, Criminal Evidence (4th Ed.) 333; 1 Wigmore, op. cit. § 216; 8 R.C.L. 200. The only question, therefore, under these assignments of error, is whether the evidence objected to, regardless of the fact that it tended to prove the commission of other crimes by the accused, was relevant to the issues under the first count of this indictment." *State* v. *Holliday,* 159 Conn. 169, 172–73, 268 A.2d 368; McCormick, Evidence (2d Ed.) § 190; 1 Whar-

ton, op. cit. § 170; 29 Am. Jur. 2d 376, Evidence, § 325; see note, 93 L. Ed. 185. In this case the evidence clearly was relevant and, accordingly, we find no error in the admission of such testimony which was pertinent to the issue of the defendant's intent and motive in killing Vanasse.

The defendant next assigns as error the rulings by the court which sustained the state's objections to questions regarding the possible motives of others to kill Vanasse. The offers of proof were that threats had been made against Vanasse by other individuals. One objection was sustained on the ground of immateriality and the other was apparently sustained on the grounds of immateriality and hearsay. The defendant also sought to elicit testimony from Ryan that the victim's wife was having illicit relations with another man, but no offer of proof was made. In *State* v. *Perelli,* 125 Conn. 321, 328, 5 A.2d 705, 121 A.L.R. 1357, this court quoted with approval the statement from *State* v. *Long,* 95 Vt. 485, 492, 115 A. 734, that "'[w]hile it is always competent for a respondent to give evidence tending to show that another committed the crime of which he is charged . . . it is not enough to show merely that another had a motive to commit it.'" Evidence of the motive of one other than the defendant to commit the crime will be excluded where there is no other proof in the case which tends to connect such other person with the offense with which the defendant is charged. Note, "Admissibility in criminal prosecution of evidence of motive of one other than defendant to commit the crime," 121 A.L.R. 1362, 1363; see *State* v. *Beaudet,* 53 Conn. 536, 4 A. 237. The defendant made no offer of proof to connect anyone else with the murder of Vanasse and, accordingly, the rulings were correct. Since the record discloses that the

proof offered was immaterial to the case, we need not discuss whether the testimony excluded would have been hearsay.

The state offered several colored photographs of Vanasse, taken after the shooting, which showed the position of the body and a pool of blood next to the deceased. The defense objected to some of the photographs as superfluous and prejudicial, and the state claimed they were admissible to show the victim's eyeglasses and boots which were not depicted in the other photographs. An objection was raised that "the gruesomeness far outweighs the relevancy of those photos." "The fact that the photographs were in color, or gruesome, did not, under our rule, require their exclusion if they were relevant and material. *State* v. *Hanna*, . . . [150 Conn. 457, 461, 191 A.2d 124]." *State* v. *Conte*, 157 Conn. 209, 216, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428; *State* v. *LaBreck*, 159 Conn. 346, 351, 269 A.2d 274; *State* v. *Taborsky*, 147 Conn. 194, 215, 158 A.2d 239; note, 73 A.L.R.2d 769, 787; see note, 53 A.L.R.2d 1102; 3 Wharton, Criminal Evidence § 637.

The defendant next claims that the state's violation of § 226 of the Practice Book denied him effective cross-examination of Ryan. It states, in part: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record." The record discloses that defense counsel claimed that the court should ignore the state's objection to his questions unless the state complied with § 226 and stated grounds for its objection. The purpose of § 226 is to preserve an evidentiary ruling

as a ground for appeal. *Ferreira* v. *Storms,* 159 Conn. 259, 264, 268 A.2d 657; *Casalo* v. *Claro,* 147 Conn. 625, 628–31, 165 A.2d 153. Furthermore, it is clear from the record that the state's objection was sustained because the question asked of Ryan called for a legal conclusion.[3]   It is also clear from the colloquy between the court and defense counsel that the latter's objection was to the state's failure to state grounds for the exception and not to the evidentiary issue.

Failure of a party to comply with § 226 involves a considerable risk and may preclude that party from obtaining appellate review of an adverse ruling, but it does not preclude the party offering the evidence from making a statement of the specific grounds on which he claims the evidence is admissible. *Casalo* v. *Claro,* supra, 629. It was not error for the court to rule on the objections without requiring counsel to state the specific reasons for the objection.

Although not assigned as error, the defendant has briefed a claim that the court improperly interfered with his cross-examination of "the principal witness for the State," referring to Ryan. The appendix to the defendant's brief contains not a single question asked by the defendant on cross-examination of Ryan or of any other witness. Practice Book § 713 (d). Nor does the defendant particularize in his brief the questions asked or the rulings or actions of the court which he claims were improper.   The brief contains only a vague and

[3] "Q.  Do you realize that you have confessed to all the elements of that offense [unlawful carrying of a weapon in a vehicle] which is the second time that you have done that?  Mr. Keefe.  I object your Honor.  The Court.  Sustained as to the elements of the offense. It is a legal question."

unsubstantiated assertion of error upon which we find it unnecessary to comment further. Practice Book § 652; *State* v. *Mortoro,* 157 Conn. 392, 393, 254 A.2d 574.

The defendant bases his next three assignments of error upon the provisions of Public Acts 1969, No. 680, enacted by the General Assembly in 1969 and now included in the General Statutes as § 54-86b.[4] One of these assignments was not briefed and is, therefore, abandoned. *State* v. *Clemente,* 166 Conn. 501, 502 n.1, 353 A.2d 723; *State* v. *Brown,* 163 Conn. 52, 55, 301 A.2d 547.

The defendant claims that the court erred in not allowing the defense to examine notes and records contained in the state police file relating to the identification of the alleged victim. The trial court examined the police file in camera and subsequently held that the state had fully complied with the provisions of both § 54-86a (Public Acts 1967, No. 706, §§ 1, 2, 3) and Public Acts 1969, No. 680. An exception was noted, the file was marked as the defendant's exhibit 6 for identification only and delivered to the custody of the clerk of the court to be sealed and only to be opened by the permission of the court.

[4] "[General Statutes] Sec. 54-86b. RIGHT OF ACCUSED TO EXAMINE STATEMENTS. (a) In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use. (b) If the prosecution fails to comply with the order of the court, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

Practice Book §§ 314, 320. The defendant expressly limited his claims of error to the assertion that he was deprived of his rights under the provisions of Public Acts 1969, No. 680, to examine pretrial statements of a prosecution witness. The defendant made no claim on the basis of § 54-86a with regard to statements made by the defendant, documents, photographs or other evidence which that statute provides that the state must furnish to the defense. Nor, unlike the circumstances in *State* v. *Clemente,* supra, was any question raised as to the constitutionality of Public Acts 1969, No. 680. We have opened and examined the police file marked as the defendant's exhibit 6 for identification. Practice Book § 672; *Drazen Lumber Co.* v. *Casner,* 156 Conn. 401, 405–6, 242 A.2d 754. We cannot find that anything in that file to which the defendant was entitled under the provisions of Public Acts 1969, No. 680, was erroneously withheld from the defendant, even assuming the constitutionality of that act. See *State* v. *Clemente,* supra.

The defendant's next claim is predicated upon the provisions of Public Acts 1969, No. 680 (b) and is that the court erred in refusing to strike the testimony of Mrs. Edna Vanasse, the mother of the deceased, alleging that this statutory sanction was warranted under the circumstances. Again, even assuming the constitutionality of Public Acts 1969, No. 680, a question which was not raised in this case and not decided until *State* v. *Clemente,* supra, we find no merit to the defendant's contention.

On direct examination, Mrs. Vanasse testified to accompanying her husband to the caretaker's cottage on Saturday morning. During cross-examination by the defense, the defendant moved

pursuant to the provisions of Public Acts 1969, No. 680, for the production of any pretrial statement by the witness. Two pages of a statement were provided by the prosecution. On further cross-examination, Mrs. Vanasse testified that she telephoned the cottage on Saturday "every ten, fifteen minutes, or whenever I went by the phone." After the witness was dismissed "subject to recall," the court and counsel engaged in a colloquy regarding the sufficiency of the portion of the witness' pretrial statement under Public Acts 1969, No. 680. Although the two pages of the statement furnished the defense revealed Mrs. Vanasse's continuous efforts to telephone her son, there was at least one additional reference to her telephoning which was not noted in the statement given to the defense. This further statement was: "I woke up yesterday morning at seven o'clock and I kept calling all morning." While Mrs. Vanasse was still subject to recall, the court informed the defense counsel of this further statement which the witness had given. Noting that the additional statement was in no way inconsistent with her testimony, the court denied the defendant's motion made pursuant to the provisions of Public Acts 1969, No. 680, that her entire testimony be stricken.

In *State* v. *Clemente,* supra, which was decided subsequent to the trial in this case, we held that Public Acts 1969, No. 680, was an unconstitutional legislative infringement upon judicial administration and that decision is a sufficient basis for finding no error in the ruling of the court in the present case. Since, however, no question of constitutionality was raised on the trial of this case, we have examined the propriety of the ruling which the court made, predicated on the assumption that Public Acts

1969, No. 680, was a constitutional enactment. We find that even assuming, as did the trial court, that Public Acts 1969, No. 680, was constitutional, the ruling of the court in refusing to strike Mrs. Vanasse's testimony was a proper one. The later-discovered pretrial statement of the witness that she had telephoned the cottage "all morning" was merely repetitive of the information already communicated to the defendant, was entirely consistent with her testimony on cross-examination, and was fully disclosed to the defendant while the witness was still available for further cross-examination and there is nothing to indicate that the deferred disclosure was in any way prejudicial to the defendant.

In an apparent effort to raise every imaginable issue, the defendant has briefed other claims of error. We have reviewed each of these remaining claims, find them to be without merit and to require no discussion.

There is no error.

In this opinion SHAPIRO, LOISELLE and MACDONALD, Js., concurred.

BOGDANSKI, J. (concurring). I concur in the majority opinion but do not join in that portion which states that Public Acts 1969, No. 680, is an unconstitutional legislative infringement upon judicial administration, as was held in *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723. I reiterate my disagreement with that holding. Public Acts 1969, No. 680, grants defendants in criminal prosecutions the right to examine relevant statements made to the prosecution by the witnesses against them. That right enables defendants to more effectively exercise their constitutional right of confrontation

through cross-examination. The creation of such new rights to ensure a fair trial is an appropriate exercise of legislative power. That Public Acts 1969, No. 680, may also be a procedural directive to the trial court does not, under our constitution, detract from the power of the General Assembly to enact it. See the dissenting opinions in *State* v. *Clemente*, supra.