BANGOR AND AROOSTOOK RAILROAD COMPANY et al., Plaintiffs,

v.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Defendant.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Plaintiff,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Defendants.

Civ. A. Nos. 777–66, 784–66.

United States District Court, District of Columbia.

May 21, 1970.

Joseph L. Rauh, Jr., and Isaac N. Groner, Washington, D. C., for the Brotherhood.

Francis M. Shea, and Richard T. Conway, Washington, D. C., for the carriers.

CORCORAN, District Judge.

### I.

This case is before the Court on motion of the Brotherhood of Locomotive Firemen and Enginemen (BLF&E) for an accounting and other appropriate relief, on the opposition thereto of the

above named carriers, and on the carrier's motion for reconsideration of certain rulings included in a previous opinion of this Court issued February 4, 1970.

## II.

In this particular proceeding the issue is whether the carriers, operating in the States of Washington and Oregon, are complying with the so-called "full crew" holding of the United States Court of Appeals as set out in Brotherhood of Railroad Trainmen v. Akron & B.B. R. Co., 128 U.S.App.D.C. 59, 385 F.2d 581 (1967), cert. denied, 390 U.S. 923, 88 S.Ct. 852, 19 L.Ed.2d 982 (1968). We set out briefly the background against which we have to decide this case.[1]

Prior to Arbitration Award 282 the manpower requirements of the railroads were governed by the National Diesel Agreement of May, 1950. That agreement in substance required that a fireman be included on every engine crew. Arbitration Award 282, promulgated by a congressionally created arbitration board, suspended the operation of the National Diesel Agreement for a period of two years. It provided the procedures whereby the nearly two hundred carriers involved could eliminate 90% of the firemen's positions during the two year period of the Award.

On the other hand certain so-called "full crew" laws of various states, specifying the minimum crew (including firemen) required to be used under certain defined conditions, were in apparent conflict with the Arbitration Award.[2] At the time Arbitration Award 282 became effective, the States of Washington and Oregon had such laws on their books and

those laws were not repealed until after the termination of the Award. The question then presented was whether the carriers could, after the expiration of the Award, use the Award's procedures to "blank" all but 10% of the firemen positions, a privilege which had been denied them while the "full crew" laws were on the books of the various states.

The "full crew" issue, *inter alia*, came before the late Judge Alexander Holtzoff in 1966. He entered judgment in Bangor & Aroostook Railroad v. Brotherhood of Locomotive Firemen and Enginemen, 253 F.Supp. 682 (D.D.C.1966), holding that no affirmative steps could be taken under the Award once it had terminated.

Cross appeals were taken to the United States Court of Appeals for the District of Columbia. The Court affirmed Judge Holtzoff on the "full crew" aspects of the dispute, Brotherhood of Railroad Trainmen v. Akron & B.B. R. Co., *supra*, 128 U.S.App.D.C. at 88–89, 385 F.2d at 611–612, holding that in situations where a state "full crew" law had been in effect throughout the life of the Award, that full crew law blocked any modification of the National Diesel Agreement through employment of the procedures provided by the Award.

The Court adopted the "new plateau" theory that the work rules in effect on the last day of the Award remained in effect until changed by agreement of the parties or pursuant to action taken under Section 6 of the Railway Labor Act, 45 U.S.C. §§ 151–163 (1964), as amended, 45 U.S.C. § 153 (Supp. II, 1966). The Court further held that the Award procedures did not constitute work rules

---

1. The background leading to the creation of the Arbitration Board which issued Award 282 was thoroughly detailed in Brotherhood of Railroad Trainmen v. Akron & B.B. R. Co., *supra*, 128 U.S. App.D.C. at 65–70, 385 F.2d at 588–592.

2. The Supreme Court in two separate decisions held (1) that the "full crew" laws had not been preempted by the law creating the Arbitration Board and the Award did not, therefore, supersede the state

laws. Brotherhood of Locomotive Engineers v. Chicago, Rock Island and Pacific Railroad Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966); and (2) that the "full crew" laws were not invalid under the interstate commerce and due process clauses of the Constitution. Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Rock Island & Pacific Railroad Co., 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968).

and that even if the full crew laws were repealed after termination of the Award the National Diesel Agreement and its requirement of a fireman on every engine crew would continue to apply. The case was then remanded to the District Court to enter judgment in accordance with the Court of Appeals rulings; and on May 29, 1968 Judge Holtzoff reaffirmed his judgment "as modified by the opinions and judgments of the United States Court of Appeals for the District of Columbia."

### III.

On September 16, 1968 the Brotherhood of Locomotive Firemen and Enginemen (BLF&E) filed a motion for an accounting and for other appropriate relief charging failure on the part of the carriers to comply with court orders requiring the use of firemen on certain freight runs in the States of Oregon and Washington.

Judge Holtzoff heard oral arguments on the motion on February 11, 1969. At the conclusion of that hearing he disposed of the "full crew" issue by an oral ruling, but reserved for further argument a decision as to the effect of certain agreements which had been entered into between the BLF&E and the Northern Pacific Railway (Northern Pacific) and the Spokane, Portland and Seattle Railway Companies (SP&S) respectively. He asked the parties to submit proposed orders on the "full crew" issue in accordance with his oral rulings.

The arguments as to the agreements mentioned above were held March 17, 1969. Again Judge Holtzoff ruled orally and again requested the parties to submit proposed orders, this later order, however, to embrace not only the contract issue, but also his earlier rulings as to the "full crew" issue.

Following the March hearing the BLF&E and the carriers entered into protracted negotiations in an attempt to reach a new national agreement governing the use of firemen. The new orders requested by Judge Holtzoff were not submitted until September, 1969, after negotiations had broken down. Judge Holtzoff died before acting on the orders. In November the case was assigned to this Court for all purposes.

### IV.

On December 11, 1969 the BLF&E filed a supplemental memorandum on the "full crew" issue casting doubt on this Court's power to issue an order covering the oral rulings of Judge Holtzoff without first rehearing arguments on the motion as a *de novo* proceeding. The BLF&E argues that Rule 63 Fed.R.Civ.P. requires such a *de novo* hearing under the circumstances of this case.[3] The BLF&E further argues that Judge Holtzoff always held a hearing on any proposed order, that such a hearing was in effect a *de novo* proceeding, and that such a hearing at this stage would insure a clear disposition of all aspects of the motion.

Particularly in view of the fact that this Court did open the record for a reconsideration of certain limited issues, it does not now feel that a *de novo* proceeding *in extenso* is required by Rule 63, nor does it feel that such a hearing would contribute anything significant to that which is already in the record.

The motions were presented to Judge Holtzoff on the basis of affidavits, briefs, and oral arguments. This Court has before it the same affidavits and briefs as well as the transcripts of the oral arguments. There were no witnesses, no testimony to be subjected to a

---

3. Rule 63 reads as follows:
   "If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

credibility test, and no jury. There is no motion to offer additional evidence and the Court is of the opinion that if any were forthcoming it would be merely cumulative. Brennan v. Grisso, 91 U.S.App.D.C. 101, 198 F.2d 532 (1952), cited by the BLF&E, does not seem pertinent to the case at bar in that it involved a trial where the credibility of witnesses was of great import.

A case more clearly on point is Makah Indian Tribe v. Moore, 93 F.Supp. 105 (W.D.Wash.1950) rev'd on other grounds, 192 F.2d 224 (9th Cir. 1951) where the trial judge before his death issued an extended oral opinion and another judge entered judgment based on that opinion, without benefit of a transcript of the evidence, because the opinion "provide[d] a clear understanding of the factual basis and legal reasons" for the deceased judge's decision. *Id.*, at 107.

Rule 63 states that the new judge in a case "may perform" certain duties if "conclusions of law" have been issued by the deceased judge, unless the new judge "is satisfied that he cannot perform those duties." The Court is satisfied that clearly stated conclusions of law were reached by Judge Holtzoff and that this Court can perform its duties on the basis of Judge Holtzoff's rulings.

The intendment of Judge Holtzoff's rulings as to the "full crew" issue is amply demonstrated by these excerpts from the February 11 hearings:

" * * * [A]ll trains affected by the full crew laws must under the Diesel Agreement continue to operate with a fireman * * * Any fireman who was discharged erroneously under an erroneous interpretation of the law is entitled to receive what wages he may have lost and individual claims [are to] be presented to the special boards. (Tr. 39).

* * * * * *

" * * * [T]he railroads were not entitled to abolish any firemen's positions or offer comparable positions to any fireman covered by Award 282 after the expiration of the date of the Award, even though they were prevented from doing so [because of] the effect of the full crew laws * * *. And it is their duty to restore those positions which they did abolish subsequent to the effective date of the Award. (Tr. 48).

* * * * * *

" * * * [I]ndividual firemen who were erroneously discharged shall have valid claims for loss of wages caused by the discharge to be passed upon by the special boards. (Tr. 49).

* * * * * *

" * * * The Union as an entity has not sustained any damages, any money damages * * * (Tr. 56).

* * * * * *

" * * * [T]he Court will at this time render a declaratory judgment reiterating the prior holding * * * on the right to discharge firemen in full crew law states, plus holding that any positions that may have been abolished by any railroad in violation of that declaration must be restored and the men rehired accordingly. (Tr. 64).

* * * * * *

"[It will also] provide * * * that any fireman who was eroneously discharged in violation of this holding previously is entitled to be recompensed for loss of wages and such claim shall be heard by the special boards; and, third, [it will] deny any accounting or money judgment in favor of the Brotherhood as an entity on the ground that the Brotherhood as an entity has not sustained any money damages * * * (Tr. 65).

* * * * * *

" * * * [W]hat I hold is that after the moment that the award 282 expired, the railroads could no longer discharge firemen under the award, and they could no longer abolish positions. (Tr. 65).

* * * * * *

" * * * And I hold further that wherever they abolished any of those

jobs they must restore them and rehire somebody." (Tr. 66).

As noted, the hearing on March 17 concerned the one remaining issue— whether the Northern Pacific and the SP&S had entered into agreements with the BLF&E concerning the use of firemen which superseded the National Diesel Agreement and thus are not now subject to that Agreement. Judge Holtzoff examined the agreements, affidavits, and briefs and after oral argument he ruled explicitly:

"The agreement between the Brotherhood and the Spokane, Portland and Seattle Railway Company is dated December 8, 1966. It is supplemented by a more detailed agreement in the form of a letter from the Chief of Personnel of the railway to the General Chairman of the Brotherhood dated October 2, 1967. It is further supplemented by the agreement dated February 28, 1968, and again by a supplemental agreement dated March 1, 1968, and finally by a letter dated November 15, 1968, and again by an agreement dated December 27, 1968.

"The detailed terms of the agreement are set forth in the letter of October 2, 1968.

"In addition to making provisions relating to seniority of firemen which were not relevant to this discussion, the agreement lists all assignments to the freight and yard service which were still being manned by firemen in the states of Washington and Oregon which are two of the states that had full crew laws.

"The agreement purports to be complete on its face and the Court construes it to mean that all assignments enumerated in the agreement must continue to be manned by firemen but none others. A somewhat different situation presents itself in connection with the agreement between Northern Pacific Railway Company and the Brotherhood. Here again we are confronted with detailed agreements concerning positions of firemen on freight trains.

"This agreement differs from that with the Spokane, Portland and Seattle Railway Company. This agreement is concerned principally with the rights of seniority of firemen; it does not clearly and unequivocally affect the list of runs which were manned by firemen at the time Award 282 expired and therefore does not affect the question here involved.

"The Court reaches the conclusion that insofar as the Spokane, Portland and Seattle Railway Company is concerned no relief should be awarded to the Brotherhood except continuation of the requirements that the runs listed in that agreement should continue to be manned with firemen, but that as to the agreement between the Northern Pacific Railway Company and the Brotherhood the number of the runs that must be manned by firemen is not affected and that therefore the railroad must continue to man with firemen every run which was so manned at the time of the expiration of Award 282.

"I will make an order effectuating those two conclusions." (Tr. 71–72).

The Court has made its own independent study of the entire record made before Judge Holtzoff. Additionally, as noted, it has held hearings on specific points raised by the parties in connection with a motion for reconsideration of certain points set forth in an earlier opinion which is being vacated by the order being issued concomitantly.

## V.

We consider first the "full crew" issue. The decision of the United States Court of Appeals,[4] and two Supreme Court decisions,[5] leave no doubt as to the effect of a state's "full crew"

4. Brotherhood of Railroad Trainmen v. Akron & B.B. R. Co., *supra*, 128 U.S. App.D.C. at 59, 385 F.2d at 581 (1968).

5. See note 2, *supra*.

laws on Award 282. The procedures of the Award permitting abolition and "blanking" of jobs could not be effectuated as long as a "full crew" law remained on the books. If the "full crew" laws were repealed *before* the termination of the Award, then the Award could take effect. However, if the "full crew" laws were repealed *subsequent* to the Award's expiration, then the National Diesel Agreement became operative and remained in effect unmodified unless changed by agreement of the parties or pursuant to notice under Section 6 of the Railway Labor Act. Thus in the "full crew" law states the carriers could neither abolish nor "blank" firemen positions on those crews and runs subject to the "full crew" laws. But, if a crew or run were not subject to the "full crew" law, then the procedures of the Award could have been used during the life of the Award.

The "full crew" laws of Oregon and Washington [6] did not require the use of a fireman within "yard limits" and on certain freight trains being operated in road service. Thus the application of Award 282 to those crews did not violate the "full crew" ruling of the Court of Appeals.

■ However, it is clear that the carriers in Oregon and Washington after expiration of the Award and the subsequent repeal of the full crew law in those states erroneously and in violation of the orders of the District Court and the United States Court of Appeals "blanked" and abolished firemen's positions on runs previously covered by the "full crew" laws. They must now restore those positions and continue to use firemen as re-

quired by the National Diesel Agreement until changed by agreement of the parties or pursuant to Section 6 of the Railway Labor Act.

■ It is also clear that any fireman deprived of employment as a fireman by reason of illegal blanking or having his job abolished illegally is entitled to have his right to a fireman's job restored and to be compensated for fireman's wages lost during the period when he was deprived of employment as a fireman.[7] If necessary, men must be hired to fill any such positions so restored. Section 3 Second of the Railway Labor Act (45 U.S.C. § 153 Second) would provide the special boards best suited to handle the claims for damages by firemen injured by the illegal blanking or abolition. It would be an unreasonable burden for the Court to compute the hundreds of claims that will most likely be made. The special boards have the expertise and they should handle the matter.

■ Judge Holtzoff denied a money judgment in favor of the BLF&E as he could not see how the BLF&E as an entity suffered or sustained any money damages. (Tr. 54–62). The Court agrees.

## VI.

We turn now to the agreements between the BLF&E and the SP&S and the Northern Pacific respectively.

■ This Court is in accord with Judge Holtzoff's ruling insofar as it applies to the SP&S agreements and holds as he did that those agreements effected a modification of the National Diesel Agreement. The carriers are re-

---

6. § 764.120 (1913) Oregon Revised Statutes (repealed 1965); § 81.040.020 (1911) Revised Code of Washington (repealed 1966).

7. It became clear in the course of the hearing for reconsideration that the term "discharged" as it appears in Judge Holtzoff's oral ruling, *supra* at 614–615, could not have been intended literally to embrace a separation of a fireman from the employment rolls of a carrier since, it was conceded, that no one was in fact "discharged" in that sense. Taking cognizance of Judge Holtzoff's expertise in this particular field it may be assumed that he would not have used a meaningless term and that accordingly he was in fact referring to the loss of a fireman's right to fill a fireman's job because that job had been eliminated by illegal blanking or abolition. Those firemen so injured have a right to submit their claims for compensation to a Section 3 Board.

quired to use firemen only on those crews specified in the SP&S agreements.

The Court disagrees, however, with Judge Holtzoff's ruling

"that as to the agreement between the Northern Pacific Railway Company and the Brotherhood the number of the runs that must be manned by firemen is not affected and that therefore the railroad must continue to man with firemen every run which was so manned at the time of the expiration of Award 282." (Tr. 72).

The Northern Pacific and the BLF&E entered into a Memorandum of Understanding on January 9, 1968, and a Memorandum of Agreement on January 29, 1968, effective March 16, 1968 (together constituting "the agreement"). The agreement followed the expiration of Award 282; it followed the Court of Appeals holding in Brotherhood of Railroad Trainmen v. Akron & B.B. R. Co., *supra*, 128 U.S.App.D.C. at 88–89, 385 F.2d at 611–612; and it followed the repeal of the "full crew" laws in Oregon and Washington.

As this Court construes the cited agreement, it is concerned not only with seniority rights as emphasized by Judge Holtzoff, but also with the manpower requirements as they relate to the use of firemen. It provides, in substance, that throughout the Northern Pacific system only passenger and hostler assignments shall be considered as "must fill" positions. Until additional firemen are needed in a given seniority district to man such "must fill" assignments, there is no obligation on the Northern Pacific to hire firemen in addition to those employed on March 16, 1968. On that date firemen, on the basis of seniority, were to select their preferred crews, except that each "must fill" position had to be manned. On those crews not selected the fireman position was subject to blanking. As those firemen employed on the effective date are promoted to engineer, die, retire or otherwise are removed from employment as firemen by natural attrition, the number of crews on which firemen are used is reduced until firemen are only being used on "must fill" crews. Once the reduction has reached the point that there will be insufficient firemen to man the "must fill" positions, the parties designate or veto 10% of the freight and yard crews in the seniority district and the Northern Pacific must use firemen on the vetoed crews. At that point additional firemen will have to be hired to assure sufficient manning of the vetoed crews and the "must fill" positions.

The actions of the parties under the agreement add force to this analysis. Since its effective date, both sides have acted as if the National Diesel Agreement was modified and have looked to the January 1968 Agreement (and later supplements) to determine whether or not firemen had to be used on a particular crew. It is, accordingly, the opinion of this Court that the January 1968 Agreement did establish new work rules which modified the National Diesel Agreement and that firemen are required to be used only as specified in those agreements.

VII.

In summary:

(1) Upon the repeal of the "full crew" laws in the States of Oregon and Washington, subsequent to the expiration of Award 282, the National Diesel Agreement of 1950 became and continued to be operative until modified by agreement of the parties or pursuant to the provisions of Section 6 of the Railway Labor Act. It follows that any firemen positions subject to such "full crew" laws which were abolished by the carriers under the procedures of Award 282 must be restored and that firemen must be used in such positions unless and until the provisions of the National Diesel Agreement are modified by agreement of the parties or pursuant to the provisions of Section 6 of the Railway Labor Act.

(2) Any fireman covered by the full crew laws of Oregon and Washington who was deprived of employment as a fireman as a result of illegal blanking or abolition of his position is entitled to be rehired and compensated for his loss of wages during the period he was

deprived of employment as a fireman. Individual claims by injured firemen will be referred to Special Boards of Adjustment, established pursuant to Section 3 Second of the Railway Labor Act.

(3) The claim by the BLF&E for an accounting or for a money judgment in favor of the BLF&E as an entity should be denied.

(4) The oral agreements of December 8, 1966, reduced to writing on October 2, 1967, and later supplemented, between the BLF&E and the SP&S, modified the National Diesel Agreement and established new work rules in each instance. The carriers are now required to use firemen only on those crews specified in such agreements.

(5) The Memorandum of Understanding of January 9, 1968 and the agreement of January 29, 1968, later supplemented, between the BLF&E and the Northern Pacific modified the National Diesel Agreement and established new work rules in each instance. The carriers are now required to use firemen only on those crews specified in such agreements.

Except as provided above, the Motion for Accounting and other Appropriate Relief is denied.