Birney T. HAVEY, Petitioner-Appellant,

v.

George A. KROPP, Warden, Respondent-Appellee.

No. 71-1890.

United States Court of Appeals, Sixth Circuit.

April 14, 1972.

Arthur J. Lombard, Detroit, Mich., for petitioner-appellant.

Charles Alpert, Mich. Atty. Gen., Lansing, Mich., for respondent-appellee; Frank J. Kelley, Atty. Gen., Robert C. Goussy, Asst. Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on brief.

Before EDWARDS, PECK and KENT, Circuit Judges.

PECK, Circuit Judge.

The two principal issues presented on this appeal were created by two deaths which occurred in the long history of this case, one while it was being litigated in the Michigan state courts and one during a post-conviction proceeding in the federal courts. We deal with the latter

first because it is susceptible of summary disposition; indeed, our treatment of this issue would be even more abbreviated were it not for the earnestness with which appellant has presented it.

Following an exhaustion of remedies in the courts of the State of Michigan, petitioner-appellant sought a writ of habeas corpus in the District Court. The case was thoroughly briefed, argued and was submitted, but the District Judge died without announcing a decision. It was subsequently discovered that he had prepared what appeared to be an opinion in final form granting the writ of habeas corpus, but since it had not been filed the case was assigned to another judge. The second judge, being of the view that one issue of fact existed, held a limited evidentiary hearing and further argument, and then filed an opinion denying habeas corpus relief and dismissing the petition. This appeal was perfected from that order, and in the argument above referred to, appellant urges that the second District Judge should have, as a matter of law, filed or caused to be filed the opinion and order of her deceased colleague.

■ Appellant offers no direct authority in support of this argument, but urges that under Rule 63, Federal Rules of Civil Procedure, (which we conclude to be without application), the deceased judge's opinion could have been filed and judgment entered. He argues the application of Bangor & A. R. R. v. Brotherhood of Locomotive Firemen and Enginemen, 314 F.Supp. 352 (D.D.C.1970), in which the first judge had orally announced his decision and had requested the parties to submit proposed orders. That case, however, is clearly distinguishable from the present one because in the case before us no announcement of any kind had been made. Appellant argues that a filing had been delayed pending a "polishing" of the opinion, but it is just as possible that the delay was occasioned by the existence of some doubt in the mind of the author. Almost certainly, every competent and conscientious judge has on occasion changed his mind during the course of research, contemplation and writing, and at the very least it is his right to do so up to the moment of the filing of his work product. Thus, if anything, the fact that Judge Theodore Levin, who drafted the unfiled opinion, was an outstanding jurist and scholar strengthens the view which we adopt. We hold that Judge Kennedy, from whose order the present appeal was perfected, was not required as a matter of law to file or be bound by the unfiled draft, and suggest that the very fact that a judge of such professional preeminence refrained from filing the opinion may itself have been good cause to find it unpersuasive—if not to regard it with suspicion.

The resolution of the issue arising out of the other death above referred to requires some recitation of the facts. Appellant was indicted under an indictment charging the robbery of a jewelry store in 1959. (The case against a codefendant, who had allegedly waited in and drove the get-away car, was dismissed on motion for lack of evidence, and no aspect of that case is before us.) One Curtis Koontz was alone in the store at the time. He was struck in the face with a pistol wielded by a man whom he subsequently identified as the appellant, and who took approximately $10,000 in jewelry in the store. Koontz identified the appellant from a "mug shot" shown to him in late 1963, four years after the offense. In March, 1964, a preliminary examination was held following appellant's arrest. Koontz testified at that hearing, and appellant's attorney conducted a cross-examination which he now characterizes as "limited." Trial was entered into in December of 1965, and Koontz was called as a witness. However, he collapsed and died on the witness stand during direct examination (and before an opportunity for cross-examination had been presented), and a mistrial was thereupon declared. In April of 1965 another trial was conducted, in the course of which appellant was found guilty by the jury. An exhaustion of state remedies as to that convic-

tion preceded the filing of the present habeas corpus action.

■ In the course of the second trial Koontz's testimony at the preliminary hearing was presented to the jury from the transcript of that hearing. In that testimony Koontz identified the appellant as his assailant and the robber, and appellee concedes that this evidence, which alone ties appellant into the offense, was essential to the prosecution's case. The question presented is whether appellant was denied his constitutional right to be confronted with the witnesses against him in view of the fact that the testimony of the crucial prosecution witness was received in the form of a transcript of a preliminary hearing, albeit one at which he had opportunity for cross-examination. In this context, confrontation of course means more than what has come to be called an "eyeball to eyeball" meeting. In addition to being physically present with a charging witness, a confrontation in this context must include an opportunity for the accused to cross-examine. And if this right is to have meaning, it must be a right to examine fully concerning the testimony offered on direct examination, and to do so without reservation.

Whether the formal right of cross-examination at a preliminary hearing is precisely the same as that to cross-examine at trial is open to doubt. In practice considerations of trial philosophy and tactics generally may militate against more than a perfunctory cross-examination, if that, and it further appears that cross-examination at such hearings varies widely in different jurisdictions. It must also be borne in mind that the issues at a preliminary hearing and at trial are substantially different, since while at the latter the issue is the guilt or innocence of the accused, the former is concerned only with whether an offense has been committed and whether probable cause exists to hold the accused for trial. Barber v. Page, 390 U.S. 719, 725–726, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). That the burden of the prosecution at a Michigan preliminary hearing is limited to establishing probable cause is demonstrated in People v. Asta, 337 Mich. 590, 60 N. W.2d 472 (1953). *See* Mich.Comp.L.Ann. § 766.13, Mich.Stat.Ann. § 28.931 (1954).

We stated earlier that after the present case was reassigned to Judge Kennedy she conducted an evidentiary hearing on a single issue. That issue concerned the general practice in the conducting of preliminary hearings in the jurisdictions of and near that in which appellant's trial was conducted. Included in the evidence received at hearing was, by stipulation, an affidavit of an expert in the professional and geographical areas. That affidavit stated that it is the usual practice of defense attorneys not to reveal their case and not to cross-examine further where such examination cannot result in dismissal of the charge because too much other evidence of probable cause exists. It is further apparent that as a trial tactic cross-examination at this early stage of the procedure might well be considered harmful to a defendant by alienating the witness, by polarizing his views and by preparing him to offer even more damaging testimony at trial. On the basis of such factors, were it not for the existence of an applicable Michigan statute, it might be difficult to conclude that appellant had not been denied the right of confrontation. In the present circumstance, however, neither was the defendant nor are we now considering the issue in the absence of an applicable statutory provision. Mich.Comp.L.Ann. § 768.26 (1968), Mich.Stat.Ann. § 28.1049 (1954), provides:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise incapacitated to testify."

This statute was in effect at the time of the preliminary hearing and, therefore, when appellant by his counsel decided to conduct only what he considered to be a limited cross-examination, he did so at his own risk. The opportunity for unlimited cross-examination existed,[1] and since he was chargeable with knowledge of the statute and his rights under it, he cannot now be heard to complain because by his own choice he did not fully cross-examine.

Appellee argues that California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) is controlling. While some of the language and philosophy of that opinion concluding that the transcript of a preliminary hearing was admissible may be helpful in the present consideration, therein the question arose because of the inconsistency of a witness's testimony at the trial from that given at the preliminary hearing. The witness having been present at the trial, no confrontation issue existed, and in its basic teaching *Green* would seem to do little more than reaffirm the right to cross-examine on the basis of a prior inconsistent statement. However, Mr. Justice White, albeit in a passage which would appear to be obiter dictum, went on to state:

> "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented

him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, *Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him.*" (399 U.S. 163, 165, 90 S. Ct. 1938. Emphasis supplied.)

Since "Porter's" testimony would, under this language, have been admissible even if he had been unavailable, so must the transcript of Koontz's preliminary hearing testimony be admissible, because his intervening death undeniably thwarted all "good-faith efforts of the State to produce him."

■ The remaining issue concerns appellant's contention that the failure of the trial judge to poll and instruct the jury regarding prejudicial trial publicity constituted a denial of due process. This contention arises from the fact that although during the course of the trial there was some publication and broadcast of facts arguably detrimental to the cause of the defense, the trial judge declined to inquire of the jurors as to whether they had read or heard such statements and been influenced thereby. By no stretch of the imagination can this situation be compared to that existing in such cases as Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), which appellant cites, and nothing in the record persuades us that there was any abuse of discretion in this regard arising to constitutional proportions.

The judgment of the District Court will be affirmed.

---

1. The fact that the magistrate who conducted the preliminary hearing testified in the District Court evidentiary hearing that neither he nor his colleagues limited such cross-examination is consistent with but not essential to our conclusion.