HELENE N. WHITE, Circuit Judge,
dissenting.
DISSENT
I do not agree that we lack jurisdiction to review the BIA’s decision insofar as it concluded that Gaye failed to show that his application for asylum was timely under 8 U.S.C. § 1158(a)(2)(B) and rejected his due-process claim. Further, I conclude the BIA erred when it relied on IJ Holt’s credibility findings, and would remand for a proper determination of Gaye’s credibility.
I.
The majority concludes we lack jurisdiction to entertain Gaye’s challenge to the BIA’s determination that he failed to show that his application for asylum was filed within the one-year deadline prescribed in 8 U.S.C. § 1158(a)(2)(B). The INA provides that “[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]'.” Id. § 1158(a)(3). However, as the majority acknowledges, the INA confers jurisdiction to review “constitutional claims or questions of law.”[1] Id. § 1252(a)(2)(D).
Although Gaye challenges the factual determination that he failed to show he entered the country on October 17, 2000— a determination I agree is beyond our review — he also argues that the BIA committed legal error in relying on IJ Holt’s credibility determination impermissibly made on the record created by IJ Burman. We have jurisdiction to review the Board’s ruling to the extent it involves Gaye’s legal claims.
The majority also concludes that we do not have jurisdiction to review Gaye’s due-process claim because he did not raise it first to the BIA and therefore did not exhaust his administrative remedies. However, the record shows Gaye argued to the BIA that IJ Holt “erred as a matter of law when, rather than taking testimony, the IJ based an adverse credibility finding solely on the transcripts of the hearings conducted by a different IJ,” and requested a remand “[bjecause the IJ could not have made a proper factual credibility determination without ever having an opportunity to observe demeanor of the witnesses or ask clarifying questions.” The BIA understood Gaye to be making a due-process argument, as evidenced by its conclusion that “the record reveals that the respondent received a full and fair hearing on the merits of his claim,” and determined that remand was unnecessary because IJ Holt complied with regulations by stating in her decision that she had considered all the evidence and that she was familiar with the entire record.[2] On ap *532 peal, Gaye continues to challenge the fairness of the proceedings below. Thus, we have jurisdiction to review this claim.
II.
Gaye argues the BIA erred in dismissing his appeal based on IJ Holt’s adverse credibility determination, which she made, in violation of his due process rights, without personally observing Gaye’s demeanor, candor, and responsiveness to questioning, on a flawed and incomplete record created by IJ Burman, who admitted he could not serve as an impartial trier of fact. In evaluating whether Gaye was denied adequate process, this court considers (1) whether there was a defect in the proceeding, and if so, (2) whether the defect prejudiced him. Abdallahi v. Holder, 690 F.3d 467, 472 (6th Cir.2012).
A.
It is important to recall that the BIA vacated IJ Burman’s ruling denying Gaye’s claims, concluding that the IJ’s credibility findings were not supported, and remanded “for the Immigration Judge to make a specific assessment of [GayeJ’s credibility.” On remand, IJ Burman re-cused himself, finding that he could not serve as a fair and neutral factfinder because he “remain[ed] convinced to a moral certainty that [Gayej’s testimony was false.” IJ Holt, to whom the case was reassigned, found Gaye was not a credible witness based solely on the record created before IJ Burman. The question, then, is whether IJ Holt deprived Gaye of “a full and fair hearing” when she made an initial assessment of his credibility without ever observing him testify. Abdallahi, 690 F.3d at 472 (citing Vasha v. Gonzales, 410 F.3d 863, 872 (6th Cir.2005)).
The Fifth Amendment’s guarantee of due process extends to persons in removal proceedings, entitling them to a full and fair hearing. Huicochea-Gomez v. I.N.S., 237 F.3d 696, 699 (6th Cir.2001). We consider the following factors in assessing the constitutional adequacy of the procedures afforded to Gaye: (1) private interests at stake; (2) risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and (3) governmental interests, including costs and administrative burden of the additional process. United Pet Supply, Inc. v. City of Chattanooga, 768 F.3d 464, 485 (6th Cir.2014) (citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The amount of process that is due varies according to the facts of each case, Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 634 (6th Cir.2005), and the hearing guaranteed by the Fifth Amendment’s Due Process Clause must be “appropriate to the nature of the case,” United States v. Raddatz, 447 U.S. 667, 677, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (internal quotation marks omitted); Ahmed v. Gonzales, 398 F.3d 722, 725 (6th Cir.2005).
Judges “must always be sensitive to the problems of making credibility determinations on the cold record.” Raddatz, 447 U.S. at 679, 100 S.Ct. 2406. It is generally the case that “[t]he one who decides must hear,” and must, for herself, assess credibility. Id. at 677, 100 S.Ct. 2406 (quoting Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288 (1936)) (internal quotation marks omitted). This is true as well in immigration cases. Un *533 der the INA, an applicant may obtain asylum in the United States if the applicant proves to the Attorney General’s satisfaction that he or she is a “refugee” entitled to a discretionary grant of asylum. 8 U.S.C.A. § 1158(b)(1) (West 2001); Abay v. Ashcroft, 368 F.3d 634, 636 (6th Cir.2004). The applicant bears the burden of showing that the applicant qualifies as a refugee “either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.” Abay, 368 F.3d at 636 (quoting 8 C.F.R. § 208.13(b)). To obtain relief in the form of withholding of removal, the applicant must prove that there is a clear probability that the applicant will be subject to persecution if forced to return to the country of removal, a more stringent showing than what is required in an asylum proceeding. Pilica v. Ashcroft, 388 F.3d 941, 951 (6th Cir.2004). To establish a claim under the CAT, the applicant has the burden of showing “that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.” Id. (quoting 8 C.F.R. § 208.16(c)(2) (2004)). An immigration judge — and in some cases, an asylum officer — determines an applicant’s eligibility for relief and has the authority to grant or deny the applicant’s request. 8 C.F.R. §§ 208.14(a) (asylum); 208.16(a), (d) (withholding); 208.16(c)(4)(CAT).
The INA (both before and after Congress amended it in 2005 with the REAL ID Act) requires a hearing on any asylum application or request for withholding of removal. 8 U.S.C. §§ 1158 (asylum), 1229a (removal proceedings). Notably, the INA requires an evidentiary hearing on removability to take place in person or through video conference. A telephone conference is permitted only with the applicant’s consent after the applicant has been advised of the light to proceed in person or through video conference. Id. § 1229a(b)(2). The INA additionally requires the IJ to receive evidence and examine witnesses, and provides that an applicant has the right to present evidence and to cross-examine the Government’s witnesses. Id. § 1229a(b)(1), (b)(4)(B). Although the pre-REAL ID Act INA did not explicitly require credibility determinations, agency decisions interpreting the Act did, as did the INA’s implementing regulations. Indeed, the regulations provide that an applicant’s testimony, “if credible,” may be sufficient to sustain the applicant’s burden without corroboration. 8 C.F.R. §§ 208.13(a) (asylum), 208.16(a) (withholding of removal), 208.16(c)(2) (protection under the CAT). The BIA accordingly views an applicant’s credibility as a threshold issue. See In Re S-A- 22 I. & N. Dec. 1328, 1331 (BIA 2000); In Re O-D-, 21 I. & N. Dec. 1079, 1081 (BIA 1998). An IJ must provide specific reasons to support her credibility findings so as to allow meaningful review. Sylla v. I.N.S., 388 F.3d 924, 926 (6th Cir.2004). The INA thus recognizes the importance of an IJ’s ability to observe the proceedings and the testifying witnesses, and it strongly suggests an IJ may only assess the applicant’s credibility after seeing and hearing the applicant testify, or after the applicant waives such opportunity.
Although 8 C.F.R. § 1240.1(b), which addresses immigration judge substitutions, requires the “new immigration judge [to] familiarize himself or herself with the record in the case and ... state for the record that he or she has done so,” it admittedly does not expressly require rehearings in certain circumstances or expressly limit the circumstances in which a successor IJ can judge credibility without hearing the witness testify. In this respect, it lacks the procedural safeguards found in its civil procedure analogue, Federal Rule of Civil Procedure 63, which *534 authorizes a replacement judge to “proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties,” but further requires that a successor judge, in a hearing or bench trial, rehear the testimony of a witness whose testimony is material and disputed and who is available to testify again without undue burden, if a party so requests. Fed.R.Civ.P. 63. The Advisory Committee’s note to Rule 63 provides that the Rule “authorizes the substitute judge to make a finding of fact at a bench trial based on evidence heard by a different judge ...' in limited circumstances.” Fed.R.Civ.P. 63 advisory committee’s note to 1991 amendment. The Committee identified two such circumstances: First, where a testifying witness has become unavailable, the successor judge may treat the witness’s transcribed testimony as a recorded deposition pursuant to Rule 32; and second, after the replacement judge determines that a witness’s testimony is not material or is not disputed, the court may decline to rehear it. Id. The Advisory Committee cautions that the “court would ... risk error to determine the credibility of a witness not seen or heard who is available to be recalled.” Id. (citing Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Because only triers of fact “can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding of and belief in what is said,” Anderson, 470 U.S. at 575, 105 S.Ct. 1504, determining credibility is a function fully committed to them, and it is assessed under the totality of the circumstances, e.g., id.; Wolfe v. Brigano, 232 F.3d 499, 501 (6th Cir.2000) (observing that in a habeas case, the district court makes “no credibility determination or other apparent finding of fact” when its decision is based on the transcript of the petitioner’s state-court trial (internal quotation marks omitted)); United States v. Word, 72 F.3d 131 (6th Cir.1995) (unpublished table decision). These principles reflect the common understanding of a full and fair hearing. Abdallahi, 690 F.3d at 472; Huicochea-Gomez, 237 F.3d at 699.
Here, the BIA vacated IJ Burman’s order after concluding the record did not support his credibility findings, and remanded for a “specific assessment of [Gayej’s credibility.” IJ Holt was. thus charged with making an initial determination of Gaye’s credibility. The BIA’s characterization of Gaye’s claim as a request for “an additional opportunity to testify before the presiding Immigration Judge” thus misapprehends the very task it assigned to the IJ. (Emphasis added.) Gaye asked for an initial opportunity to testify before the IJ charged with judging his credibility. Given the point at which IJ Holt took over the proceeding and her charge to make an initial determination of Gaye’s credibility, her bare compliance with 8 C.F.R. § 1240.1(b) did not provide Gaye with all the process he was due.
Based on the authorities discussed above, I find implicit in the notion of a full and fair hearing an opportunity to testify before the IJ who is charged with making an initial assessment of the applicant’s credibility. Although an IJ can weigh some credibility factors without observing the applicant testify (such as the consistency between transcribed testimony and other documentary evidence), a credibility finding, properly based on the totality of the circumstances, should weigh all relevant factors, including the witness’s demeanor, candor, and responsiveness to questioning.[3] See 8 U.S.C.
*535 § 1158(b)(1)(B)(iii). IJ Holt was charged with making an initial assessment of Gaye’s credibility; she could not properly make that assessment based solely on a cold record. See Olle v. Henry & Wright Corp., 910 F.2d 357, 361 (6th Cir.1990) (observing that a hew trial is generally required when a deceased judge did not make findings of fact); Arrow-Hart, Inc. v. Philip Carey Co., 552 F.2d 711, 713 (6th Cir.1977) (holding court must conduct new trial, absent parties’ consent, where deceased judge had not issued findings of fact and conclusions of law before death); Havey v. Kropp, 458 F.2d 1054, 1055 (6th Cir.1972) (finding no error in replacement judge refusing to file opinion of deceased judge and denying plaintiffs petition after first holding limited evidentiary hearing on the one factual issue that existed and hearing further argument). Because Gaye’s testimony is material to his claims for relief, and because the parties did not consent to the IJ’s determination of Gaye’s credibility based on the record, the IJ should have conducted a new hearing. The burden of a new hearing on the Government is minimal in light of the INA’s hearing requirement, the BIA’s remand order, and IJ Holt’s earlier recognition that she needed to hold a hearing.
The Government contends our decision-in Abdallahi v. Holder, 690 F.3d 467 (6th Cir.2012), undercuts Gaye’s claim of procedural error. In that case, we held that Abdallahi’s due-process rights were not violated when the IJ who heard Abdallahi’s testimony did not decide the case, and the substitute IJ denied his request for a new hearing and decided the case without ob *536 serving him testify. Id. at 471. Because the successor IJ complied with 8 C.F.R. § 1240.1(b) by certifying that he sufficiently familiarized himself with the record, we concluded Abdallahi failed to show there was a procedural defect in his removal proceedings, and affirmed the BIA’s determination that Abdallahi was inadmissible because the record evidence demonstrated that he had “committed, ordered, incited, assisted, or otherwise participated in the commission of any act of torture.” Id. at 473-74 (quoting 8 U.S.C. § 1182(a)(3)(E)(iii)).
Despite the apparent similarity, Abdall-ahi is fundamentally different from the instant case in that Abdallahi’s credibility was not at issue because his own testimony established that he participated in torture and was thus ineligible for adjustment of status. Unlike in Abdallahi the IJ here was required to make an initial, “specific assessment of [Gaye]’s credibility.”’ ■
B.
To establish prejudice, Gaye “must show due process violations led to a substantially different outcome from that which would have occurred in the absence of these violations.” Abdallahi, 690 F.3d at 472 (quoting Garzas-Moreno v. Gonzales, 489 F.3d 239, 241-42 (6th Cir.2007)) (internal quotation marks omitted). Regarding Gaye’s asylum claim, IJ Holt found that Gaye did not establish his burden that he timely filed an application for asylum based in part on Gaye’s “own non-credible testimony” and Sait Ceesay’s testimony, which the IJ found was not credible. The BIA adopted IJ Holt’s reasons and added that there was no record evidence showing Gaye’s entry date “[ojther than [Gayej’s unpersuasive testimony, his witnesses] unconvincing testimony, and a brief written statement provided by ... Alie Ceesay, which indicates that Mr. Ceesay ‘picked up’ [Gaye] at the John F. Kennedy airport on October 17, 2000.” Had the IJ personally observed Gaye testify and found him credible, Gaye would be statutorily eligible for asylum.
Gaye similarly has shown prejudice with regard to his withholding claim. The BIA’s decision recognized that IJ Holt denied Gaye’s withholding claim based in part on an adverse credibility finding. And since Gaye’s testimony, if credible, could have been enough to sustain his burden, Gaye was prejudiced by the IJ’s failure to hear his testimony.
The Government contends, however, that the BIA’s withholding' decision rested solely on the IJ’s determination that Gaye failed to meet his burden for withholding because he did not produce reasonably available corroborating evidence or adequately explain the absence of such evidence and not on the IJ’s adverse credibility determination. The Government mischaracterizes the BIA’s decision.
First, the BIA’s decision expressly noted the IJ’s “skepticism” of Gaye’s testimony relating to an essential element of his withholding claim. Second, even if it were true that the BIA upheld the IJ’s decision based on the corroboration rule, and not on adverse credibility determinations, Gaye could have met his burden solely with his credible testimony. In its decision, the BIA recalled that this court recognized in Dorosh v. Ashcroft, 398 F.3d 379 (6th Cir.2004), that an applicant’s failure to provide corroborating evidence that is reasonably ascertainable “can lead to a finding that an applicant has failed to meet her burden of proof.” Id. at 382 (emphasis added) (internal quotation marks omitted). And, as the INA’s regulations provide, an applicant’s credible testimony may be sufficient to sustain the applicant’s burden without corroboration. 8 C.F.R. § 208.13(a). Here, because the BIA’s de- *537 cisión regarding withholding of removal does not purport to be based solely on the corroboration rule, the decision cannot properly be characterized as based solely on Gaye’s failure to supply adequate corroboration, and Gaye’s credibility as a witness cannot be regarded as irrelevant to the outcome.
For these reasons, I would grant the petition for review, vacate the BIA’s decision, and remand for further proceedings.[4]

. The parties do not dispute this provision’s application to Gaye’s case. The provision, which Congress added to the INA in the REAL ID Act, is applicable because the agency's final order of removal was made "before, on, or after the [REAL ID Act's] date of ... enactment.” REAL ID Act of 2005, sec. 106(b), Pub.L. No. 109-13, 119 Stat. 231, 311.

. Tellingly, the Government on appeal does not argue we lack jurisdiction to review *532 Gaye’s due-process claim regarding IJ Holt’s process of making credibility findings. It contends, rather, we do not have jurisdiction to review his claim that IJ Burman violated his due-process rights. Indeed, the Government offers an analysis of the first claim, but not the second. The Government is correct.

. As the Supreme Court recognized, several factors "go into the decision whether or not *535 to believe a witness.” Anderson, 470 U.S. at 575, 105 S.Ct. 1504. And courts have long recognized that a witness’s demeanor and presentation of testimony are critical factors a trier of fact should consider when assessing whether the witness is credible. See, e.g., id.; Raddatz, 447 U.S. at 679, 100 S.Ct. 2406; N.L.R.B. v. Dinion Coil Co., 201 F.2d 484, 487 (2d Cir.1952) (‘‘Repeatedly, the courts have said that, since observation of such ‘demeanor evidence’ is open to a trier of the facts when witnesses testify orally in his presence, and since such observation is not open to a reviewing tribunal, that fact-trier’s findings, to the extent that they comprise direct or ‘testimonial’ inferences, are ordinarily un-reviewable. True, demeanor evidence may sometimes mislead; but our courts regard it nevertheless as an excellent clue to the trustworthiness of testimony. The Federal Civil Procedural Rules ... reflect this view.” (footnote omitted)); Fed.R.Evid. art. VIII advisory committee’s note ("The demeanor of the witness traditionally has been believed to furnish trier and opponent with valuable clues.”); 6th Cir. Criminal Pattern Jury Instructions 1.07(2)(D) ("Ask yourself how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?”).
In the immigration context, an IJ may base an adverse credibility determination on inconsistencies and lack of specificity in the applicant's testimony regarding events central to the person’s asylum claim. Sylla, 388 F.3d at 926; In Re S-A-, 22 I. & N. Dec. at 1331. A credibility determination also may be based on the plausibility of the witness’s account, in addition to demeanor and presentation of testimony. Matter of A-S-, 21 I. & N. Dec. 1106, 1111 (BIA 1998).
The INA, as amended by the REAL ID Act of 2005, similarly requires the IJ to:
Consider[] the totality of the circumstances, and all relevant factors, [including] demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant’s or witness's account, the consistency between the applicant’s or witness’s written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant’s claim, or any other relevant factor.
8 U.S.C. § 1158(b)(1)(B)(iii).

. Because the BIA erred in relying on the improperly found credibility determinations, I do not address Gaye’s other claims, including his second due-process claim — that IJ Bur-man created a flawed and incomplete record when he departed from his role as an impartial arbiter,